534 So.2d 760 (1988)
The STATE of Florida, Appellant,
v.
Donna Lynn PETERS and Joy Ivy Shupnick, Appellees.
No. 87-652.
District Court of Appeal of Florida, Third District.
November 15, 1988.
*761 Robert A. Butterworth, Atty. Gen., and Nancy C. Wear, Asst. Atty. Gen., for appellant.
Michael S. Kaufman, for appellee Peters.
No appearance for appellee Shupnick.
Before BASKIN and DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from an order of the county court invalidating a City of North Miami ordinance regulating the ownership of pit bull dogs. Pursuant to Florida Rule of Appellate Procedure 9.160, the county court certified that its order passed upon a question of great public importance. We *762 accept jurisdiction,[1] Fla.R.App.P. 9.160(e)(2), uphold the ordinance, and reverse and remand for further proceedings.

I.
The ordinance in question, City of North Miami Ordinance No. 422.5, regulates the ownership of pit bulls by requiring their owners to carry insurance, post a surety bond, or furnish other evidence of financial responsibility in the amount of $300,000 to cover any bodily injury, death or property damage that may be caused by the dog. The ordinance also requires that owners register their pit bulls with the City and confine the dogs indoors or in a locked pen. The ordinance defines pit bulls by reference to characteristics of the breed established by the American Kennel Club (AKC) and the United Kennel Club (UKC):
"(a) The term `Pit Bull Dog' as used within this Article shall refer to any dog which exhibits those distinguishing characteristics which:
"(1) Substantially conform to the standards established by the American Kennel Club for American Staffordshire Terriers or Staffordshire Bull Terriers; or
"(2) Substantially conform to the standards established by the United Kennel Club for American Pit Bull Terriers.
"(b) The standards of the American Kennel Club and the United Kennel Club referred to in paragraph (a) above, are attached hereto as `Exhibit A' and shall remain on file with the Animal Control Office of the City of North Miami.
"(c) Technical deficiencies in the dogs [sic] conformance to the standards in paragraph (b) shall not be construed to indicate that the subject dog is not a `Pit Bull Dog' under this ordinance."

II.
The defendants, Donna Lynn Peters and Joy Ivy Shupnick, were charged with violating the pit bull ordinance. They moved to dismiss the charges on the grounds that the ordinance violates equal protection and due process, and on the ground that the ordinance's definition of a pit bull is on its face unconstitutionally vague.[2],[3] The county court granted the motion, concluding in pertinent part:
"[T]he said definition of a `Pit Bull Dog' contained in the ordinance is overbroad, vague and irrational.
"[T]estimony from the Defendants established uncontrovertibly that the required *763 insurance was not available, that Insurance Companies would not write such a policy. The City has no authority to regulate Insurance Companies and cannot require them to issue a policy... . Sec. 6-28 [of the ordinance], titled Liability Insurance Etc. is unconstitutionally oppressive... ."

A.

The Equal Protection Claim
The defendants claimed below and claim here that the ordinance violates the equal protection clauses of the federal and state constitutions in two ways. First, it irrationally differentiates between owners of pit bulls and owners of other breeds of dogs[4]; second, it fails to include within the pit bull definition half-breed pit bulls  dogs popularly regarded as pit bulls  which may be as vicious as purebred pit bulls.
The defendants' claim overlooks that the constitutional guarantee of equal protection of the laws does not guarantee that all dog owners will be treated alike; at most, the only guarantee is that all owners of defined pit bulls will be treated alike. It is well established that a law is not constitutionally defective simply because it contains classifications which are underinclusive  that is, which "do not include all who are similarly situated with respect to a rule, and thereby burden less than would be logical to achieve the intended government end." L. Tribe, American Constitutional Law § 16-4, at 1447 (1988).[5] Courts must give legislatures great leeway in creating classifications:
"The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others."

Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955) (citations omitted).
See also Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 610, 55 S.Ct. 570, 571, 79 L.Ed. 1086, 1089 (1935) ("The State was not bound to deal alike with all these classes, or to strike at all evils at the same time or in the same way."). Thus, a law which punishes males for statutory rape but does not punish females does not violate equal protection. Michael M. v. Superior Court, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) (plurality). In response to the contention that the rape statute must be broadened to include females as well as males, the plurality in Michael M. stated that the relevant inquiry "is not whether the statute is drawn as precisely as it might have been, but whether the line chosen by the ... Legislature is within constitutional limits." Id. at 473, 101 S.Ct. at 1206, 67 L.Ed. at 445. See also Liberta v. Kelly, 839 F.2d 77 (2d Cir.1988) (law prohibiting forcible rape by males but not by females does not violate equal protection).
It follows, then, that only rarely do courts strike down under-inclusive laws as being unconstitutionally arbitrary. L. Tribe, supra § 16-4, at 1447 n. 4. Where there is no fundamental right or suspect class at issue  as here, where the classification concerns animals  courts will usually *764 uphold the constitutionality of the law. Thus, it has been held that there is no equal protection violation in a law which gives preference to cattle but not to sheep in grazing on government lands, Omaechevarria v. Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763 (1918), or prohibits the ownership of dogs but permits the ownership of cats in public housing, Bogan v. New London Housing Authority, 366 F. Supp. 861 (D.Conn. 1973), or gives greater compensation for the destruction of some types of cattle than for others, Burt v. Arkansas Livestock and Poultry Commission, 278 Ark. 236, 644 S.W.2d 587 (1983), or schedules quarterhorses to race in parimutuel races at less favorable times than thoroughbred horses, Idaho Quarterhorse Breeders Association, Inc. v. Ada County Fair Board, 101 Idaho 339, 612 P.2d 1186 (1980). Additionally, the Florida Supreme Court has held that there was no equal protection violation when the Legislature imposed strict liability for injuries caused by dogs, but not those caused by livestock. Selby v. Bullock, 287 So.2d 18 (Fla. 1973). Still more to the point are recent pit bull cases upholding the right of the legislative body to regulate only pit bulls. In Starkey v. Township of Chester, 628 F. Supp. 196, 197 (E.D.Pa. 1986), a federal district court rejected the contention that an ordinance regulating only pit bulls violated equal protection: "The Township does not have to regulate every dangerous animal at the same time in the same way to pass constitutional muster." Similarly, a New Mexico court recently upheld a law which entirely banned the ownership of pit bulls, stating that a
"legislature or municipal governing body is entitled to address threats in a piecemeal fashion, countering each threat as it arises. To satisfy equal protection tenets, it is not necessary that the Village address all potential threats from all breeds of dog; instead, the Village was entitled to address a phase of the problem that was of acute concern."

Garcia v. Village of Tijeras, No. 9424, slip op. at 10 (N.M.Ct.App. Oct. 11, 1988) (citations omitted).
Therefore, since the City of North Miami had no obligation to regulate all dogs when it regulated some dogs, the determinative issue is whether the North Miami City Council had a rational basis for regulating pit bulls. The federal district court in Starkey v. Township of Chester, 628 F. Supp. at 197, found that "[t]he Township could reasonably determine, as it did, that Pit Bulls are dangerous." See also Garcia v. Village of Tijeras, No. 9424 (N.M.Ct. App. Oct. 11, 1988) (ordinance banning pit bulls is reasonably related to protection of residents). Likewise, in the present case, there is ample evidence to support the City's conclusion that pit bulls should be controlled. The ordinance itself states:
"WHEREAS, dogs commonly referred to as `Pit Bulls' were for centuries developed and selectively bred for the express purpose of attacking other dogs or other animals such as bulls, bears, or wild hogs; and
"WHEREAS, in developing a dog for this purpose, certain traits were selected and maximized by controlled breeding, including extremely powerful jaws, a high sensitivity to pain, extreme aggressiveness towards other animals, and a natural tendency to refuse to terminate an attack once it has begun; and
"WHEREAS, in addition to statistical evidence that Pit Bull Dogs have a greater propensity to bite humans than all other breeds, there exists overwhelming evidence in the form of individual experiences, that the Pit Bull is infinitely more dangerous once it does attack; and
"WHEREAS, the Pit Bull's massive canine jaws can crush a victim with up to two thousand (2,000) pounds of pressure per square inch  three times that of a German Shepherd or Doberman Pinscher, making the Pit Bull's jaws the strongest of any animal, per pound; and
"WHEREAS, after consideration of the facts, this Council has determined that the following Ordinance is reasonable and necessary for the protection of the public health, safety and welfare."
*765 The findings recited in the ordinance are unchallenged.[6] While pit bulls have their defenders, see Hearne, Lo, Hear the Gentle Pit Bull!, Harper's, June 1985, at 59, the City's choice to regulate pit bulls cannot be said to have been arbitrary or irrational.

B.

The Due Process Claim
The question presented here is whether the ordinance's requirement that pit bull owners obtain insurance or the equivalent guarantee of financial responsibility violates their constitutional rights to due process. As previously noted, the trial court found that the insurance requirement was "unconstitutionally oppressive" in that it required pit bull owners to buy insurance even though the evidence presented showed that no insurance company would write a policy covering the harms which might be wrought by pit bulls.
Although we have little doubt that pit bull owners would perceive the insurance provision of the ordinance as oppressive, oppression is not the equivalent of unconstitutionality. The extensive power exercised by government to regulate animals has a long-standing history of passing constitutional muster. As the Supreme Court noted almost a century ago, the damages caused by dogs
"are usually such as are beyond the reach of judicial process, and legislation of a drastic nature is necessary to protect persons and property from destruction and annoyance... . [Dogs are] subject to the police power of the state, and might be destroyed or otherwise dealt with as in the judgment of the legislature is necessary for the protection of its citizens. That a state, in a bona fide exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be, which has for its objects the welfare and comfort of the citizen."

Sentell v. New Orleans & Carrollton R.R. Co., 166 U.S. 698, 706, 705, 17 S.Ct. 693, 696, 695-96, 41 L.Ed. 1169, 1172, 1171 (1897).
See also Nicchia v. New York, 254 U.S. 228, 41 S.Ct. 103, 65 L.Ed. 235 (1920). Indeed, because it is likely that a governmental authority could ban pit bulls outright without offending the due process rights of the dog owner,[7] a fortiori, less stringent regulations such as those found in the City of North Miami's ordinance would not so offend.[8],[9]

*766 C.

The Vagueness Claim
This claim relates to the definitions of "pit bull" found in Exhibit A attached to the ordinance. Exhibit A, containing the American Kennel Club and United Kennel Club standards, is here reproduced as it appears in the record. (See Appendix)
The defendants[10] argue that the law is fatally flawed because it includes alternative and sometimes inconsistent definitions of "pit bull"; states that a dog may be a "pit bull" under the ordinance even if there are "[t]echnical deficiencies in the dogs [sic] conformance to the standards"; and each of the three definitions of the dogs  the American Kennel Club definition for Staffordshire Terriers, the American Kennel Club definition for Staffordshire Bull Terriers, and the United Kennel Club definition for American Pit Bull Terriers  is vague.[11]

1.
It is fundamental that laws "must be sufficiently definite in describing the conduct prohibited in order that the ordinary person may know how to comply with its provisions." Steffens v. State ex rel. Lugo, 343 So.2d 90, 91 (Fla. 3d DCA 1977). "An assault on the constitutionality of a statute vel non must necessarily succeed if the language does not convey sufficiently definite warnings of the proscribed conduct when measured by common understanding and practice." D'Alemberte v. Anderson, 349 So.2d 164, 166 (Fla. 1977). See also Slaughter v. State, 301 So.2d 762 (Fla. 1974); Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969). However, contrary to the defendants' claim, the requirement that one have notice of what is illegal is not in the least violated by the ordinance's alternative definitions of pit bull. As the ordinance makes clear, a dog is a "pit bull" if it substantially conforms to the American Kennel Club standard for Staffordshire Terriers or the American Kennel Club standard for Staffordshire Bull Terriers or the United Kennel Club standard for American Pit Bull Terriers. An owner or prospective owner of a dog need only look at each of the three standards and determine whether the dog is described by any one of them; if it is, then that the dog is not described by the other standards is irrelevant.

2.
Nor is the ordinance unconstitutionally vague in providing that "technical deficiencies" in a dog's conformance to the definitions shall not be construed to indicate the dog is not a pit bull within the *767 meaning of the ordinance. This statement in the ordinance is merely the converse of the ordinance's requirement that a pit bull is a dog which "[s]ubstantially conform[s]" to one of the three standards. The Constitution simply does not require that a pit bull which satisfies virtually every element of an ordinance's definition of "pit bull" be excluded from the ordinance's ambit when it substantially, but not exactly, conforms to the ordinance's definition.
Laws using phrases similar to "technical deficiencies" and "substantially conform" have withstood challenges on vagueness grounds. See Zenith Radio Corp. v. Matsushita Electric Industrial Co., 402 F. Supp. 251, 256 (E.D.Pa. 1975) ("substantially less"); People v. Weaver, 147 Cal. App.3d Supp. 23, 36-37, 197 Cal. Rptr. 521, 530 (1983) (discussing various permissible uses of "substantial"). As is well understood, the term "technical deficiencies" is used to describe deficiencies which are deemed to be insignificant or trivial. See Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 996, 3 L.Ed.2d 1041, 1048 (1959); United States v. Beard, 414 F.2d 1014 (3d Cir.1969); Ratner v. Miami Beach First National Bank, 362 So.2d 273, 274 (Fla. 1978); Devco Development Corp. v. Hooker Homes, Inc., 518 So.2d 922, 923 (Fla. 2d DCA 1987), review denied, 525 So.2d 877 (Fla. 1988); McCoy v. Hoffmeister, 435 So.2d 989 (Fla. 5th DCA 1983); State v. Holmes, 256 So.2d 32, 36 (Fla. 2d DCA), aff'd, 273 So.2d 753 (Fla. 1972). The ordinance's allowance for an insignificant or trivial or insubstantial variance in the dog's conformance to the definition of the ordinance does not render the ordinance void for vagueness.

3.
Lastly, the defendants claim that the three definitions of a pit bull are themselves unconstitutionally vague. While it is true that the definitions contain descriptions such as "HEAD: Medium length" and "Coat  Short, close, stiff to the touch, and glossy," which lack "mathematical certainty," such certainty is not essential to constitutionality.[12]See Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222, 229 (1972).
The fundamental concern of the vagueness doctrine, we stress again, is that people be placed on notice of what conduct is illegal. While some cases advise that a statute must put persons of "common intelligence and understanding" on notice of the proscribed conduct, see State v. Hamilton, 388 So.2d 561, 562 (Fla. 1980), others make clear that "there is no need for legislation to give fair warning except to those potentially subject to it. For this reason, if a penal statute is addressed to those in a particular trade or business, it is sufficient if the terms used have a meaning well enough defined to enable one engaged in that trade or business to apply it correctly." 1 W. LaFave & A. Scott, Substantive Criminal Law § 2.3, at 129 (1986). See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 501 n. 18, 102 S.Ct. 1186, 1195 n. 18, 71 L.Ed.2d 362, 373 n. 18 (1982) ("Roach clip" has a "sufficiently clear meaning in the drug paraphernalia industry"); Hygrade Provision Co. v. Sherman, 266 U.S. 497, 502, 45 S.Ct. 141, 142, 69 L.Ed. 402, 407 (1925) *768 ("`[K]osher' has a meaning well enough defined to enable one engaged in the trade to correctly apply it."); Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1354 (Fla. 1984) ("fish trap" has a definite meaning within the fishing industry); Potomac Sand and Gravel Co. v. Governor of Maryland, 266 Md. 358, 379, 293 A.2d 241, 252 (1972) ("tidal marshlands" is a term which should be known by a company with experience dredging sand and gravel). We believe the terms used in Exhibit A to the ordinance are sufficiently well understood by pit bull owners to enable them to determine whether their dogs fall within the proscription of the ordinance.[13]
Therefore, whether a dog is covered by the North Miami ordinance is a matter of evidence, not constitutional law. See City of Lima v. McFadden, No. 1-85-22 (Ohio Ct. App. June 30, 1986) (Westlaw, 1986 WL 7474) ("Whether any particular animal falls within this classification is an issue of fact to be determined by the evidence presented."); State v. J.H.B., 415 So.2d 814, 815 (Fla. 1st DCA 1982) ("The issue of what type of dog is customarily used for taking wildlife presents an evidentiary question rather than a constitutional validity question."). The factfinder, perhaps assisted by expert testimony, is to determine whether a particular dog is within the scope of the ordinance.
Having rejected all of the defendants' claims, we reverse the order dismissing the charges against the defendants and declaring the City of North Miami Ordinance No. 422.5 unconstitutional. The case is remanded for further proceedings.

APPENDIX

 EXHIBIT A
 OFFICIAL U.K.C. AMERICAN PIT
 BULL TERRIER STANDARD
 Revised January 1, 1978

HEAD: Medium length. Brick like in shape. Skull flat and widest
at the ears, with prominent cheeks free from wrinkles.
MUZZLE: Square, wide and deep. Well pronounced jaws, displaying
strength. Upper teeth should meet tightly over lower teeth,
outside in front.
EARS: Cropped or uncropped (not important). Should set high on
head, and be free from wrinkles.
*769 EYES: Round. Should set far apart, low down on skull. Any color
acceptable.
NOSE: Wide open nostrils. Any color acceptable.
NECK: Muscular. Slightly arched. Tapering from shoulder to head.
Free from looseness of skin.
SHOULDERS: Strong and muscular, with wide sloping shoulder
blades.
BACK: Short and strong. Slightly sloping from withers to rump.
Slightly arched at loins, which should be slightly tucked.
CHEST: Deep, but not too broad, with wide sprung ribs.
RIBS: Close. Well-sprung, with deep back ribs.
TAIL: Short in comparison to size. Set low and tapering to a fine
point. Not carried over back. Bobbed tail not acceptable.
LEGS: Large, round boned, with straight, upright patterns,
reasonably strong. Feet to be of medium size. Gait should be
light and springy. No rolling or pacing.
THIGH: Long with muscles developed. Hocks down and straight.
COAT: Glossy. Short and stiff to the touch.
COLOR: Any color or marking permissible.
WEIGHT: Not important. Females preferred from thirty to fifty
pounds. Males from thirty-five to sixty pounds.
 OFFICIAL A.K.C. STANDARDS
 American Staffordshire Terrier
 Head  Medium length, deep through, broad skull, very
pronounced cheek muscles, distinct stop; and ears are set high.
Ears  Cropped or uncropped, the latter preferred. Uncropped ears
should be short and held half rose or prick. Full drop to be
penalized. Eyes  Dark and round, low down in skull and set far
apart. No pink eyelids. Muzzle  Medium length, rounded on upper
side to fall away abruptly below eyes. Jaws well defined.
Underjaw to be strong and have biting power. Lips close and even,
no looseness. Upper teeth to meet tightly outside lower teeth in
front. Nose definitely black.
 Neck  Heavy, slightly arched, tapering from shoulders to back
of skull. No looseness of skin. Medium length.
 Shoulders  Strong and muscular with blades wide and sloping.
 Back  Fairly short. Slight sloping from withers to rump with
gentle short slope at rump to base of tail. Loins slightly
tucked.
 Body  Well-sprung ribs, deep in rear. All ribs close together.
Forelegs set rather wide apart to permit of chest development.
Chest deep and broad.
 Tail  Short in comparison to size, low set, tapering to a fine
point; not curled or held over back. Not docked.
 Legs  The front legs should be straight, large or round bones,
pastern upright. No resemblance of bend in front. Hindquarters
well-muscled, let down at hocks, turning neither in nor out. Feet
of moderate size, well-arched and compact. Gait must be springy
but without roll or pace.
 Coat  Short, close, stiff to the touch, and glossy.
 Color  Any color, solid, parti, or patched is permissible, but
all white more than 80 percent white, black and tan, and liver
not to be encouraged.
 Size  Height and weight should be in proportion. A height of
about 18 to 19 inches at shoulders for the male and 17 to 18
inches for the female is to be considered preferable.
 Staffordshire Bull Terrier
 Head and Skull  Short, deep through, broad skull, very
pronounced cheek muscles, distinct stop, short foreface, black
nose. Pink (Dudley) nose to be considered a serious fault.
 Eyes  Dark preferable, but may bear some relation to coat
color. Round of medium size, and set to look straight ahead.
Light eyes or pink eye rim to be considered a fault, except that
where the coat surrounding the eye is white the eye rim may be
pink.
 Ears  Rose or half-pricked and not large. Full drop or full
prick to be considered a serious fault.
*770 Mouth  A bite in which the outer side of the lower incisors
touches the inner side of the upper incisors. The lips should be
tight and clean. The badly undershot or overshot bite is a
serious fault.
 Neck  Muscular, rather short, clean in outline and gradually
widening toward the shoulders.
 Forequarters  Legs straight and well boned, set rather far
apart, without looseness at the shoulders and showing no weakness
at the pasterns, from which point the feet turn out a little.
 Body  The body is close coupled, with a level topline, wide
front, deep brisket and well sprung ribs being rather light in
the loins.
 Hindquarters  The hindquarters should be well muscled, hocks
let down with stifles well bent. Legs should be parallel when
viewed from behind.
 Feet  The feet should be well padded, strong and of medium
size. Dewclaws, if any, on the hind legs are generally removed.
Dewclaws on the forelegs may be removed.
 Tail  The tail is undocked, of medium length, low set,
tapering to a point and carried rather low. It should not curl
much and may be likened to an old-fashioned pump handle. A tail
that is too long or badly curled is a fault.
 Coat  Smooth, short and close to the skin, not to be trimmed
or de-whiskered.
 Color  Red, fawn, white, black or blue, or any of these colors
with white. Any shade of brindle or any shade of brindle with
white. Black-and-tan or liver color to be disqualified.
 Size  Weight: Dogs, 28 to 38 pounds; bitches, 24 to 34 pounds.
Height at shoulder: 14 to 16 inches, these heights being related
to weights. Nonconformity with these limits is a fault.

NOTES
[1] The questions presented by this appeal are most appropriately ones which we should decide. Judgments of federal courts about the vagueness of state statutes are made in light of prior state constructions of the statute. Wainwright v. Stone, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). In vagueness challenges to pit bull ordinances, two federal district courts have abstained, pursuant to Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). See Holt v. City of Maumelle, 647 F. Supp. 1529 (E.D.Ark. 1986); Responsible Dog Owners v. Board of County Commissioners, No. 85-6743-Civ (S.D.Fla. Jan. 9, 1985) (Westlaw, 1985 WL 8031) (Broward County ordinance).
[2] The defendants make their attack on the insurance requirement under the rubric of due process and make a separate attack on vagueness grounds. Although we also deal with them separately, constitutional vagueness attacks are properly understood as being based on the guarantee of due process of law. See Garcia v. Village of Tijeras, No. 9424 (N.M.Ct.App. Oct. 11, 1988); 1 W. LaFave & A. Scott, Substantive Criminal Law § 2.2 (2d ed. 1986) (discussing transformation of void for vagueness from common law to constitutional law).
[3] Defendant Peters also argued that the ordinance is unconstitutional in that it permits arrests without probable cause and permits officers to make warrantless arrests for misdemeanors committed outside their presence. However, Peters has no standing to raise these contentions, as the police officer's complaint/arrest affidavit shows that the charge against Peters was based on probable cause and the offense was committed within the officer's presence. See State v. Hagan, 387 So.2d 943, 945 (Fla. 1980) ("Appellees may not challenge the constitutionality of a portion of the statute which does not affect them."); Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979); Voce v. State, 457 So.2d 541 (Fla. 4th DCA 1984). Additionally, there is no showing in the record that Shupnick  who did not file a brief or participate in oral argument  has standing to make these arguments. Since the future of Shupnick's case will be controlled by our decision on this appeal, we refer to the defendants in the plural throughout this opinion.
[4] The differentiation between pit bulls and other breeds has been called "canine racism." Attacks by Pit Bulls Prompt Vicious-dog Laws, Christian Science Monitor, July 3, 1987, at 1, 3.
[5] Apparently, the trial judge was not convinced of the right of a legislative body to deal with problems piecemeal as is evidenced by his statements that "the City of North Miami has an absolute right to protect its citizens from getting bitten by dogs  dogs  not a particular breed" and "the City has a legitimate interest in trying to protect its citizens, and I think it has to be done some way... . And I don't see any reason, real reason, to confine it to pit bulls." At another point, the trial judge's statements indicate a much broader disregard of the legislative prerogative: "[W]e've got State laws that say you can't let your dogs run loose. We've got State laws that cover them if the dog bites somebody. We've got state laws that cover them if there's a vicious dog. Why do we need this ordinance in the first place?"
[6] Moreover, at the hearing on the motion to dismiss, the animal control officer for North Miami testified about the dangers posed by pit bulls. He spoke of several attacks on people by pit bulls and of the power of the jaws of a pit bull: "[A] pit bull will bite like a shark, will bite and lock, and will not release, and if it does, whatever it bites, its going to keep in its mouth." Newspapers and television news programs have reported brutal attacks by pit bulls, often with a child as the victim, and numerous personal injury cases arising from attacks by pit bulls have been chronicled in the Southern Reporter. See, e.g., Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985); Vasques v. Lopez, 509 So.2d 1241 (Fla. 4th DCA 1987); White v. Whitworth, 509 So.2d 378 (Fla. 4th DCA 1987); Ward v. Young, 504 So.2d 528 (Fla.2d DCA 1987); Anderson v. Walthal, 468 So.2d 291 (Fla. 1st DCA 1985); Manucy v. Manucy, 362 So.2d 478 (Fla. 1st DCA 1978). Pit bulls have even been considered weapons in first-degree assaults. See State v. Livingston, 420 N.W.2d 223 (Minn. Ct. App. 1988). For a more complete and graphic description of the harm wrought by pit bulls see Garcia v. Village of Tijeras, No. 9424 (N.M.Ct.App. Oct. 11, 1988).
[7] As noted, the New Mexico Court of Appeals recently upheld the constitutionality of a law which completely bans pit bulls. Garcia v. Village of Tijeras, No. 9424 (N.M.Ct.App. Oct. 11, 1988). See also 4 Am.Jur.2d Animals § 23, at 269-70 (1962) (dogs may be subjected to drastic police regulations without depriving their owners of any federal right).
[8] At oral argument, the defendant Peters conceded that a total ban on pit bulls would not violate due process. Having done so, she was left with the curious argument that the government cannot do indirectly (enact an insurance requirement which had the effect of banning pit bulls) what it can do directly (ban pit bulls). The argument is, of course, a perversion of the black-letter principle that one cannot do indirectly what one cannot do directly.
[9] The trial court also found that "[t]he City has no authority to regulate Insurance Companies and cannot require them to issue a policy." While the statement of law is correct, it is irrelevant. To require that persons obtain insurance before engaging in a certain dangerous activity is a regulation of the activity, not the insurance company.
[10] Because defendant Shupnick admitted in court that her dog was a purebred pit bull, she arguably lacks standing to contend that the ordinance is unconstitutionally vague. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."); Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973) ("[A] person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."); State v. Hamilton, 388 So.2d 561, 562 (Fla. 1980) ("[A] defendant whose conduct clearly falls within the statutory prohibition may not complain of the absence of notice."); Garcia v. Village of Tijeras, No. 9424 (N.M.Ct.App. Oct. 11, 1988). However, while Shupnick admitted that her dog was a pit bull, she did not admit that her dog was a pit bull covered by the ordinance, and, therefore, we assume, arguendo, that she still has standing. Moreover, since Peters clearly has standing, and Shupnick could benefit from a favorable opinion on Peters' vagueness challenge to the law, the question of Shupnick's standing vel non need not be decided.
[11] These claims are that the ordinance is facially unconstitutional; no argument is made that it is unconstitutional as applied, and there is no evidence presently in the record that would allow us to consider such an attack, if one had been made.

We also note that the defendants have not claimed that the requirement that they have insurance or other guarantees of financial security denies them equal protection of the laws because it constitutes a classification based on wealth. See generally San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
[12] Most vagueness challenges concern laws which define conduct, not objects. See, e.g., Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (vagrancy law). Courts have, however, frequently upheld against vagueness challenges laws which, like pit bull ordinances, describe objects. See Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925) (kosher food); Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984) (fish trap); State v. J.H.B., 415 So.2d 814 (Fla. 1982) (dogs customarily used for taking wildlife); Wilkerson v. State, 401 So.2d 1110 (Fla. 1981) (animal and "every living dumb creature"); State v. Kaneakua, 61 Haw. 136, 597 P.2d 590 (1979) (animal and "every living creature"); Potomac Sand and Gravel Co. v. Governor of Maryland, 266 Md. 358, 293 A.2d 241 (1972) (tidal marshlands); Arundel Supply Corp. v. Cason, 265 Md. 371, 289 A.2d 585 (1972) (gravel pit); Bridgeford v. U-Haul Co., 195 Neb. 308, 238 N.W.2d 443 (1976) (truck); City of Lima v. McFadden, No. 1-85-22 (Ohio Ct. App. June 30, 1986) (Westlaw, 1986 WL 7474) (pit bull). But see Note, The New Breed of Municipal Dog Control Laws: Are They Constitutional?, 53 Cinn.L.Rev. 1067, 1080 (1984) (suggesting that pit bull ordinances are unconstitutionally vague).
[13] An Ohio appellate court, in upholding the constitutionality of a pit bull ordinance that contained no definition at all of "pit bull," wrote that "the dog owner, who harbors the dogs at his residence, is the one subject to the penalties of the law. He should know the kind of dogs he owns. The ordinance applies if the dogs be `pit bulls.'" City of Lima v. McFadden, No. 1-85-22 (Ohio Ct. App. June 30, 1986) (Westlaw, 1986 WL 7474). The appellate court, in finding that the law was not unconstitutionally vague, consulted numerous reference works on pit bulls to demonstrate that "pit bull" has a discernible meaning. We note, however, it can be difficult to determine to which breed a dog belongs, see Sentell v. New Orleans & Carrollton R.R. Co., 166 U.S. 698, 701, 17 S.Ct. 693, 694, 41 L.Ed. 1169, 1170 (1897) ("[I]t is practically impossible by statute to distinguish between the different breeds... ."), and pit bulls (as a recently developed breed) are particularly difficult to distinguish, see Efforts to Ban Pit Bulls Spark Arguments Over Residents' Safety and Civil Liberties, Wall Street Journal, July 6, 1987, at 13 ("[P]it bull is a generic term that applies to the American pit bull terrier, the American Staffordshire terrier and such mixed breeds as the Staffordshire bull terrier and the venerable bulldog."); Hearne, Lo, Hear the Gentle Pit Bull!, Harper's, June 1985, at 59, 60-61 (noting confusion over what is a pit bull). The ordinance in City of Lima offered virtually no guidance as to what is a pit bull. The North Miami ordinance, in contrast, provides three alternative definitions; if a dog meets one of the definitions, the dog is covered, regardless of what reference books or experts say. Cf. Garcia v. Village of Tijeras, No. 9424 (N.M.Ct.App. Oct. 11, 1988) (upholding against vagueness attack law banning dogs described only as "American Pit Bull Terriers").