614 So.2d 653 (1993)
STATE of Florida, Appellant,
v.
Lowell L. HODGES, Appellee.
No. 92-1692.
District Court of Appeal of Florida, Fifth District.
February 26, 1993.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellant.
Peter J. Correnti, Altamonte Springs, for appellee.
COBB, Judge.
Hodges was charged with violating the record keeping requirements of section 538.04, Florida Statutes. His defense was that his business was a "flea market" and, therefore, exempted from such requirements by the provisions of section 538.03(2)(k), Florida Statutes, a 1990 amendment of Chapter 538:
This chapter does not apply to any person purchasing, consigning, or pawning secondhand goods at a flea market regardless of whether at a temporary or permanent business location at the flea market.
At trial, Hodges established that he had purchased an occupational license to operate a flea market and advertised as such in the yellow pages. It was shown that Hodges operated a secondhand store in a plaza wherein there were no booths nor areas for separate vendors, and the word "flea market" did not appear inside or outside his store.
*654 The trial court held the 1990 flea market exception to the reporting requirements rendered sections 538.03 through 538.17, Florida Statutes, unconstitutionally vague and constituted a denial of equal protection to a class of citizens. The court found that the legislature failed to define "flea market" and that there was no rational relationship between the purpose of trying to recover stolen goods and the statute, which makes secondhand dealers register goods but exempts all purchases at flea markets.[1] Said the court:
By enacting Chapter 538's provisions relating to secondhand dealers who deal in certain types of property, the Legislature was obviously addressing the flow of stolen merchandise, much as the present and past pawnbroker laws sought to accomplish. However, when the legislature chose to grant an exemption to the reporting and other requirements of secondhand dealers (which previously applied to all secondhand dealers) to all purchases at flea markets, it did so without defining in any way or establishing criteria for what a flea market was and did so without any reasonable relation between the class of persons the exemption purported to apply to and the conduct, or lack thereof by said class of persons, sought to be curtailed (dealing in stolen property). To say that such illicit conduct does not happen at flea markets (whatever they are), but does happen at secondhand dealer shops ... and therefore the latter needs police supervision but the former does not belies reality and credulity.
The state argues that the trial court at one point actually determined that Hodges was not a flea market and stated that he was merely utilizing a "loophole."
THE COURT: I don't think for one minute, Mr. Hodges, you truly felt you were a flea market. I think like me, you knew what a flea market was, you know it when you see it.
The state finds it ironic that the trial court could determine what a flea market was and believed that Hodges could determine what a flea market was, yet found the exemption to be vague. The state relies upon the test enunciated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), wherein it was stated:
Lack of precision is not itself offensive to the requirements of due process. "[T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the prescribed conduct when measured by common understanding practices" ... "that there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense."
Roth, 354 U.S. at 491-92, 77 S.Ct. at 1312-13, quoting United States v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947). See also State v. Lindsay, 284 So.2d 377 (Fla. 1973).
In the instant case, reasonable persons could easily agree what constitutes a "flea market." The word has a plain and ordinary meaning which can be readily understood by reference to a dictionary and common experience. See Life Concepts, Inc. v. Harden, 562 So.2d 726, 728 (Fla. 5th DCA 1990). It is this court's obligation to find the statute constitutional if the application of ordinary logic and common understanding would permit. State v. Little, 400 So.2d 197, 198 (Fla. 5th DCA 1981). See also State v. Hagan, 387 So.2d 943, 945 (Fla. 1980) (where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense); State v. Peters, 534 So.2d 760, 767 n. 12 (Fla. 3d DCA 1988), rev. denied, 542 So.2d 1334 (Fla. 1989) (courts have frequently upheld vagueness challenges for laws which describe objects).
Assuming that the term "flea market" is not unconstitutionally vague, the test to be used in regard to equal protection is whether the classification rests on some difference that bears a reasonable *655 relationship to the object of the legislation. Soverino v. State, 356 So.2d 269 (Fla. 1978); State v. Slaughter, 574 So.2d 218, 220 (Fla. 1st DCA 1991). What the trial court has overlooked is that the constitutional guarantee of equal protection of the laws creates no obligation for a government to regulate all dealers in secondhand goods. The only issue is whether the legislature demonstrates a rational basis for the classification it is regulating. It is well established that a law is not constitutionally defective simply because it contains classifications which are somewhat underinclusive. State v. Peters, 534 So.2d at 763.
The rationale set forth by the state, for the disparate treatment of secondhand dealers is that, under the common meaning of "flea market" (public place where many vendors meet to buy and sell goods), it would be more difficult to conduct illicit activities in such an environment. On the other hand, a sole proprietorship or business with only one vendor would have the privacy and opportunity to conduct illicit activities with greater ease. Here, the distinction within the statute is reasonably related to preventing criminal activity or the movement of illegal secondhand goods. See also Bell v. State, 369 So.2d 932 (Fla. 1979); King v. State, 557 So.2d 899 (Fla. 5th DCA), rev. denied, 564 So.2d 1086 (Fla. 1990).
The order of this trial court setting aside the verdict and dismissing the information is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] The trial court noted that Chapter 538, prior to the flea market amendment, had withstood a constitutional challenge. See State v. Moo Young, 566 So.2d 1380 (Fla. 1st DCA 1990).