DOG FEDERATION OF WISCONSIN, INC., Glenn Whitcomb, Mary Pat Dempsey, Delores Fenelon and Larry Fax, Plaintiffs-Appellants,†

v.

CITY OF SOUTH MILWAUKEE, Defendant-Respondent.

Court of Appeals

*No. 92–2131. Submitted on briefs June 2, 1993.—Decided July 20, 1993.*

(Also reported in — N.W.2d —.)

†Petition to review pending.

355

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Mark M. Leitner* of *Kravit, Gass & Weber, S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Joseph G. Murphy*, city attorney, of South Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.   This is an appeal by the Dog Federation of Wisconsin, Inc., and four persons who claim to own dogs that may be subject to regulation by a City of South Milwaukee ordinance that imposes restrictions on the ownership and keeping of "pit bulls."[1] The Fed-

---

[1] Section 23.20 of the Municipal Code of the City of South Milwaukee provides, as pertinent to this appeal:

SECTION 1:   ....

4.   "Pit Bull" as used in this ordinance means: Any pit bull terrier, which shall be defined as any American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire Terrier breed of dog, or any mixed breed of dog which contains as an element of its breeding the breed of American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire Terrier as to be identifiable as partially of the breed of American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire Bull Terrier.

....

8a.   No person shall harbor, keep or maintain within the city limits of the City of South Milwaukee, any pit bull which was not currently registered and licensed by the City of South Milwaukee on or before April 1, 1989. This prohibition shall not be applied to animals being transported through the city limits of the City of

South Milwaukee within a one-hour period of time, and to dogs exempted under sec. 174.005 and 174.006.

8b.   A pup born to a female pit bull licensed and registered pursuant to paragraphs 8(a) and 13 hereof shall be removed from the City of South Milwaukee before the date on which it is required to be licensed pursuant to Chapter 174 Wis. Stats.

9.   Any person having knowledge which he or she believes constitutes probable cause to believe that another is harboring, keeping or maintaining a pit bull which was not registered with and licensed by the City of South Milwaukee on or before April 1, 1989, in the City of South Milwaukee, shall file with the Municipal Court Clerk a sworn affidavit setting forth the basis on which they believe the animal to be a pit bull, the name and address of the owner of the dog, and a description of the dog, with the Municipal Court Clerk. The Clerk shall, upon receipt of such affidavit, inquire of the City Clerk 1) if the dog was licensed on April 1, 1989, and 2) if the dog is currently registered as a pit bull pursuant to paragraph 13 of this ordinance. If the dog was not registered and licensed by the City of South Milwaukee on April 1, 1989, or is not currently registered pursuant to the provisions of paragraph 13 of this ordinance, the Clerk shall schedule a hearing to determine if the dog is a pit bull. The Clerk shall give notice of the hearing to the complainant and shall issue a Summons addressed to the owner of the alleged pit bull. Any dog determined by the court after hearing to be a pit bull, shall be impounded and the procedure outlined in paragraph 22 hereof shall govern disposition of the dog.

. . . .

11.   No person shall return to or harbor within the city limits of the City of South Milwaukee a dog previously determined by the Municipal Court to be a vicious dog or a pit bull. The provisions of paragraph 22 hereof shall govern the disposition of such a dog.

. . . .

13.   All owners of dangerous dogs shall on or before April 15, 1989, and annually thereafter, on or before April 15 of each year, register their dog and shall provide a current color photograph of the dog with the Treasurer's Office and pay a registration fee of $15.00. At the time of registration, each owner of any dangerous dog kept within the city limits of the City of South Milwaukee, shall provide to the Treasurer proof of liability insurance in the amount of at least $100,000.00 for any acts of property damage or liability incurred by virtue of injury inflicted by such dog. Such insurance shall name the City as co-insured solely for the purpose of notice of

357

eration and the individual appellants claim that the "pit bull" aspects of the ordinance are facially invalid for the following reasons: 1) the definition of "pit bull" is impermissibly vague; 2) the ordinance is overbroad; and 3) the ordinance violates their right to equal protection of the law. We affirm.

The parties filed cross motions for summary judgment in the trial court.[2] They thus, in effect, stipulated that there were no issues for trial and that the validity *vel non* of the ordinance could be decided on the record

cancellation of the policy. Upon payment of the fee, the Treasurer shall issue a current dangerous dog collar of an approved color for purpose of identification, and which collar is to be worn by the dog at all times as proof of registration. If, when due to the length of the dog's hair, the collar is not visible, an approved colored lead or chain may be used. In any event, the dog's tag must be attached to either collar used. An owner of a dangerous dog who fails to register his/her dog is subject to a forfeiture of not less than $100.00 nor more than $250.00 PER DAY. An owner of a dangerous dog who registers but neglects to have the dangerous dog collar worn by the dog at all times is subject to a forfeiture of not less than $25.00 nor more than $250.00 PER DAY.

. . . .

14. The owner of any pit bull registered and licensed by the City Clerk on or before April 1, 1989, shall comply with all provisions of this ordinance applicable to dangerous dogs. Any owner of a pit bull who fails to keep current the dog's license and registration as provided in paragraph 13 hereof must remove the dog from the City of South Milwaukee and will not be eligible to re-register the dog. The owner of any previously-permitted pit bull who fails to keep current the dog's license is subject to the penalties applicable to any pit bull not registered and licensed on April 1, 1989.

[2] The City of South Milwaukee denominated its motion as one for "summary dismissal," but submitted affidavits and other material. *See* Rule 802.06(3), Stats. (a motion to dismiss will be treated as a motion for summary judgment when moving party presents, and the court does not exclude, "matters outside the pleadings.").

of their submissions. *See Grotelueschen v. American Family Ins.*, 171 Wis. 2d 437, 446–447, 492 N.W.2d 131, 134 (1992). The trial court upheld the ordinance. Our review is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

The focus of the claims by the Federation and the individual appellants is on the ordinance's definition of "pit bull":

> "Pit Bull" as used in this ordinance means: Any pit bull terrier, which shall be defined as any American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire Terrier breed of dog, or any mixed breed of dog which contains as an element of its breeding the breed of American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire Terrier as to be identifiable as partially of the breed of American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire Terrier.

Ordinances, like statutes, are presumed to be constitutional and will be upheld unless shown to be unconstitutional beyond a reasonable doubt. *Eastman v. City of Madison*, 117 Wis. 2d 106, 111, 342 N.W.2d 764, 767 (Ct. App. 1983). We address the claims of the Federation and the individual appellants in sequence.

### 1. *Vagueness.*

A law regulating conduct must give adequate notice of what is prohibited, so as not to delegate "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972). Thus, "a statute which either forbids or requires the doing of

an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). Although the enactment must have "a reasonable degree of clarity," *Roberts v. United States Jaycees*, 468 U.S. 609, 629 (1984), exacting precision is not required, *Grayned*, 408 U.S. at 110, unless the enactment infringes rights that are specifically protected by the constitution, such as those of free speech and association protected by the First Amendment, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). In short, if a statute or ordinance does not directly affect constitutionally-protected interests, we may not hold it facially-invalid for vagueness even though "doubts as to the applicability of [the challenged] language in marginal fact situations may be conceived." *See United States v. Powell*, 423 U.S. 87, 93 (1975). With these principles in mind, we turn to the City of South Milwaukee ordinance.

The Federation and the individual appellants contend that an ordinary person would not be able to discern whether a dog is a "pit bull" as defined by the ordinance. They point to the City of South Milwaukee's concession that such a determination would require expert testimony at trial, and that no "current city employee" would be able to give that testimony.

The core of the appellants' factual submissions on their void-for-vagueness argument is an affidavit by Robert M. Brown, D.M.V., the chief veterinarian at the Jackson Area Pet Hospital in Jackson, Wisconsin. Dr. Brown has written various books on dog-ownership, is a columnist for two dog periodicals, and is a dog-show judge certified by the American Kennel Club. Distilled

judge certified by the American Kennel Club. Distilled to its essential points, the argument advanced by Dr. Brown's affidavit is that:

1) the breed standards referenced by the ordinance are that of the "ideal" dog of that breed;

2) non-experts would be unable to *accurately* determine whether a particular dog was the "pit bull" defined in the ordinance;

3) experts "would have difficulty determining whether a particular dog was 'identifiable' as being 'partially of' one of the breeds named" in the ordinance "*solely* upon the basis of a visual inspection" (emphasis added);

4) it is "*extremely difficult*" for him to understand and apply the ordinance's phrase "any mixed breed of dog which contains as an element of its breeding the breed of American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire Terrier" (emphasis added);

5) there is no "genetic method" to determine a dog's breed; and

6) the "only possible way in which a dog might be 'identifiable' as falling within the breeds specified in the South Milwaukee Ordinance is by examining a breeding history that is presented by the dog's owner as part of registering the dog as a purebred animal," and that "the vast majority of dogs" are not registered and lack sufficient breeding documentation, so that the only way of "*truly determining* the breed of dog" would be to breed the dog for several generations and examine the offspring. (Emphasis added.)

361

The ordinance's definition of "pit bull" makes specific reference to breeds that are recognized by both the American Kennel Club and the United Kennel Club. A "breed" is "a relatively homogenous groups of animals within a species, developed and maintained by man." AMERICAN KENNEL CLUB, DOGS 5 (1991). According to the record in this case, the American Kennel Club has established standards for the American Staffordshire Terrier and the Staffordshire Bull Terrier, while the United Kennel Club has established standards for the Staffordshire Bull Terrier and the American Pit Bull Terrier. The American Staffordshire Terrier was accepted by the American Kennel Club for registration in 1935.[3] The Staffordshire Bull Terrier was accepted by the American Kennel Club for registration in 1974, and by the United Kennel Club in 1975.[4] The record does not reveal when the United Kennel Club accepted the American Pit Bull Terrier for registration. Descriptive standards and photographs for each of the breeds denominated as a "pit bull" by the ordinance are in the record.

Reference to recognized breeds provides sufficient specifics to withstand a vagueness challenge. Thus, in *State v. Peters*, 534 So.2d 760 (Fla. Dist. Ct. App. 1988), the court upheld an ordinance that defined "pit bull" to mean "any dog which exhibits those distinguishing characteristics" that "substantially conform to the standards" established either by the "American Kennel Club for American Staffordshire Terriers or Stafford-

---

[3] The breed was accepted for registration under the name "Staffordshire Terrier." The name was changed to American Staffordshire Terrier in 1972.

[4] In 1935, the dog was recognized as a breed in England by The Kennel Club.

shire Bull Terriers" or by the "United Kennel Club for American Pit Bull Terriers." 534 So.2d at 762. *Peters* held that the ordinance was not made impermissibly vague by the provision that the ordinance applied even though there were "[t]echnical deficiencies" in a dog's "conformance to the standards." 534 So.2d at 766–767. Similarly, *Garcia v. Village of Tijeras*, 767 P.2d 355 (N.M. Ct. App. 1988), upheld, albeit after trial, an ordinance banning ownership or possession of any dog "of the breed known as American Pit Bull Terrier." 767 P.2d at 356.[5]

Although there are decisions that have ruled pit-bull ordinances too vague to pass constitutional muster, *see American Dog Owners Ass'n v. City of Des Moines*, 469 N.W.2d 416, 417–418 (Iowa 1991) (ordinance banning Staffordshire Terrier, American Pit Bull Terrier, American Staffordshire Terrier or dogs of any "other breed or mixed breed . . . known as pit bulls, pit bull dogs or pit bull terriers"); *American Dog Owners Ass'n v. City of Lynn*, 533 N.E.2d 642, 646 (Mass.

---

[5] The complainants in *Garcia* had argued that "the term 'American Pit Bull Terrier' is used only by the United Kennel Club, that the American Kennel Club uses the term 'American Staffordshire Terrier' to register the same breed, that the American Kennel Club also registers the 'Staffordshire Bull Terrier' and the 'Bull Terrier,' and that all of these breeds might be described as 'pit bulls.' " 767 P.2d at 357. The trial court found that the American Pit Bull Terrier was a breed that could be readily identified by persons who were not experts. *Id.*, 767 P.2d at 357. The New Mexico Court of Appeals determined that there was credible evidence in the record to support that finding, but declined to rule as to whether the ordinance could be applied constitutionally to persons who might not be aware that their dogs were "known as American Pit Bull Terrier[s]." *Id.*, 767 P.2d at 358.

1989) (identification by breed name insufficient) (dictum), the Federation and the individual appellants here have not carried their burden of demonstrating beyond a reasonable doubt that the City of South Milwaukee ordinance is impermissibly vague on its face. As *Peters* notes, " 'the dog owner, who harbors the dogs at his residence, is the one subject to the penalties of the law. He should know the kind of dogs he owns.' " 534 So.2d at 768 n.13 (citation omitted). Simply put, a person acquires a dog for certain physical and mental characteristics. The ordinance puts persons who have or acquire dogs on sufficient notice of the type of dog that is prohibited. Accepting as verities for the purpose of this decision Dr. Brown's conclusions that there is no absolute way to determine whether a dog is in fact a pit bull as defined in the ordinance, those conclusions do not overcome the presumption of constitutionality. Problems of ultimate proof do not make the ordinance unduly vague on its face.[6] As succinctly phrased by *Peters*, whether a dog is within the ordinance "is a matter of evidence, not constitutional law." 534 So.2d at 768.

## 2. *Overbreadth and equal protection.*

The contention by the Federation and the individual appellants that the City of South Milwaukee ordinance is overbroad is, as they articulate it in their brief, essentially one of equal protection: they argue

[6] The burden of proof in a prosecution for the violation of a municipal ordinance where the penalty is a forfeiture, as is the case with the City of South Milwaukee ordinance, is not, as might be suggested by Dr. Brown's affidavit, beyond all doubt. Rather, it is the middle burden of proof: by evidence that is "clear, satisfactory, and convincing." WIS J I—CRIMINAL 2050.

that the ordinance impermissibly treats "all pit bulls as if they are inherently dangerous, and more prone to cause harm than other dogs as a matter of law." The "overbreadth" doctrine, however, has no application outside the First Amendment context. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Accordingly, we analyze the equal-protection aspects of this case.

Equal protection of the law is guaranteed by the Fourteenth Amendment to the United States Constitution and by Article I, section 1 of the Wisconsin Constitution.[7]

> Although no precise formula has been developed, the [United States Supreme] Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended

[7] The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." The functional equivalent of this clause (and of the Fourteenth Amendment's due process clause) is found in Article I, section 1 of the Wisconsin Constitution: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." Although Article I, section 1, was based on the Declaration of Independence, "there is no substantial difference between" its guarantee of equal protection and that of the Fourteenth Amendment. *State ex rel. Sonneborn v. Sylvester*, 26 Wis. 2d 43, 49–50, 132 N.W.2d 249, 252 (1965); *see also Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244, 245 n.2 (1989) ("We have given the equal-protection provision of the Wisconsin Constitution and the parallel clause of the United States Constitution identical interpretation.").

only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.

*McGowan v. Maryland,* 366 U.S. 420, 425 (1961). The Wisconsin Supreme Court has identified five factors relevant to the equal-protection analysis:

(1)  All classification [*sic*] must be based upon substantial distinctions which make one class really different from another.

(2)  The classification adopted must be germane to the purpose of the law.

(3)  The classification must not be based upon existing circumstances only.

(4)  To whatever class a law may apply, it must apply equally to each member thereof.

(5)  That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*State ex rel. Baer v. City of Milwaukee,* 33 Wis. 2d 624, 633, 148 N.W.2d 21, 25–26 (1967) (bracketed material, citations, and ellipses omitted). Each of these criteria "must be satisfied to sustain a legislative classification against an equal-protection attack." *Funk v. Wollin Silo & Equip., Inc.,* 148 Wis. 2d 59, 63, 435 N.W.2d 244, 246 (1989).

■■■■■■

The Federation and the individual appellants contend that the ordinance's treatment of all pit bulls as dangerous has "no scientific or empirical basis" and that dangerousness is a function of "environment, training, and upbringing." Dr. Brown's affidavit and an

affidavit submitted by a breeder and trainer of pure-bred dogs, who also has master's and bachelor's degrees in experimental psychology with an emphasis in animal behavior, support this contention. The Federation and the individual appellants concede, however, that the focus of their equal-protection argument is whether there is a rational basis for the ordinance's special treatment of pit bulls. *See Funk*, 148 Wis. 2d at 69, 435 N.W.2d at 248 ("[W]here fundamental rights or suspect classes are not involved, courts employ only a rational basis as standard of review."). A classification only violates equal protection if it "is arbitrary and has no reasonable purpose or reflects no justifiable public policy." *Kallas Millwork Corp. v. Square D. Co.*, 66 Wis. 2d 382, 388, 225 N.W.2d 454, 458 (1975). On the record here, the City of South Milwaukee ordinance does not violate equal protection.

The record in this case reveals that the City of South Milwaukee common council passed the pit-bull ordinance after considering various police reports of incidents involving pit bulls.[8] Additionally, the common council considered a number of articles explaining the potential dangers posed by pit bulls and recounting

---

[8] The following matters are in the record: an unprovoked attack by a pit bull on another dog, tearing away a two-inch square piece of skin from the victim animal; a woman, her two children, and their dog chased by two pit bulls, which fought with the dog; an unprovoked attack on an eight-year-old girl by a pit bull; an unprovoked attack on an eleven-year-old boy by a pit bull; an attack on another dog by a pit bull; a police report indicating that the complainant and neighbors were afraid to walk in the neighborhood or let their children play unsupervised outside their houses because of a neighbor's three pit bulls.

serious attacks by pit bulls on children and adults.[9] One of the articles, published by the Wisconsin Humane Society, noted that "[t]he most prominent difference between the pit bull terrier and other breeds is its capability of inflicting very serious damage" and that there have been "twenty fatalities in four years" as the result of attacks on people.[10] A study reported in the May/June 1985 issue of *Community Animal Control*, concluded that pit bulls "are dangerous animals," based on the study's finding that "[t]he number of dog bites, serious bites and deaths is unproportionately greater for adult, male pit bulls." Although reasonable persons might differ on the import of this material, it cannot be said that the City of South Milwaukee ordinance "is arbitrary and has no reasonable purpose or reflects no justifiable public policy." *See Kallas Millwork Corp.*, 66 Wis. 2d at 388, 225 N.W.2d at 458. Stated another way, and applying the five criteria set out in *Baer*, 33 Wis. 2d at 633, 148 N.W.2d at 25–26, based on the evidence of record, the ordinance is founded on "substantial distinctions" between the breeds of dog covered by the ordinance and other breeds of dog; the ordinance is "germane" to the underlying purpose of the ordinance to protect persons and animals from dangerous dogs; the ordinance's distinction between pit bulls and other dogs is not based on

[9] The articles recounting attacks on humans by pit bulls included the death of a twenty-five-year-old man, and the serious injuries suffered by a three-year-old boy and a seventy-year-old woman. Another article concerned the unprovoked attack by a pit bull on a police officer.

[10] Although the article does not mention the area covered by the report of twenty fatalities, another article included in the record reports that pit bulls have been "responsible for more than 20 deaths in the past five years nationwide."

"existing circumstances only"; the ordinance applies equally to the affected class of persons owning or keeping pit bulls; and there is a sufficient distinction between pit bulls and other breeds of dog to justify their disparate treatment. The Federation and the individual appellants have not established beyond a reasonable doubt that the ordinance denies them equal protection of the law.

*By the Court.*—Judgment affirmed.