THE STATE OF OHIO, APPELLEE, *v.* HUNTER, APPELLANT.

(Nos. 46225 and 46226—Decided October 6, 1983.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Ms. Marillyn Fagan Damelio,* for appellant Pearl Hunter.

JACKSON, J. Appellant was indicted and convicted of thirteen criminal charges in connection with the forging and passing of four checks stolen from Serve Rite Food Market. The indictment included four counts of forgery (a violation of R.C. 2913.31[A][2]), four counts of uttering (a violation of R.C. 2913.31[A][3]), three counts of receiving stolen property (a violation of R.C. 2913.51), and two counts of grand theft (a violation of R.C. 2913.02). Concurrent sentences of imprisonment were imposed and suspended; appellant was placed on five years' probation and ordered to pay restitution.

The evidence showed that a checkbook was stolen from a Serve Rite van in September 1981. The account was closed the following day. At that time, the checks were blank. In January 1982, the four checks in question (state's Exhibits 1 through 4) were cashed.

State's Exhibit 1 is made out to Pearl M. Hunter and signed by Owen Williams, purportedly on behalf of Serve Rite. It is dated January 25, 1982, and is in the amount of $550. It is endorsed on the reverse side by Pearl Hunter. The handwriting on the front of the check appears to match the handwriting on the front of state's Exhibits 2 and 3, and the signature on the back appears to match the endorsement on state's Exhibit 3. The signatures on Exhibits 1, 2, and 3 all appear different from each other and from the other handwriting on the checks.

At the time of the events in this case, Robert Healey was the assistant manager of the Broadway-65th Street branch office of National City Bank, which was the branch where appellant's account was

carried. He stated that Exhibit 1, the check for $550, was deposited into appellant's account through the electronic banking machine on January 25, 1982, and was returned by the drawee bank, Ameritrust, because the Serve Rite account had been closed.

The appellant testified that on a Monday Owen Williams came to her to purchase a pit bull dog, with the check in his hand made out to her. He stated that Gregory Knight had sent him. She was unable to sell him the dog because it had been spoken for. She stated that her electronic banking card and her checkbook with the secret banking card number may have been missing from Monday, January 25, 1982, to Saturday, January 30, because on Saturday she found the checkbook and card on the floor. She stated that she did not accept the check, and that someone else must have deposited it in her account.

State's Exhibit 2 is a check in the amount of $800 signed by Willie Jones (an employee of Serve Rite who was allegedly present when the checks were stolen). It was cashed on Saturday, January 23, 1982, at the Shaker Square branch of National City Bank by appellant. Appellant was given $800 for the check. She used her electronic bank card for identification. It is endorsed by appellant, in handwriting different than the endorsement on state's Exhibits 1 and 3.

Appellant testified that Mr. Jones and his wife gave her the check as security deposit, rent, and for repairs, so that they could lease from her the downstairs portion of her home. She stated that she took the check to the Shaker Square branch of her bank to cash it because that was where Mr. and Mrs. Jones stated that their account was carried, and that Mr. Jones' signature could be verified by reference to a signature card.

State's Exhibit 3 is a check to appellant for $700 dated January 24, 1982. It was signed by a certain James Walker, and was deposited in appellant's account through use of the electronic banking machine on January 26. The endorsement on the check is in the same handwriting as the endorsement on state's Exhibit 1.

Appellant testified that Mr. Knight introduced her to Mr. Walker, who gave her the check in return for one of her dogs. She stated that a teller, Ethel Sedlecky, told her that she could not cash the check, but that the manager of the bank permitted her to deposit the check and to write a "counter check" for cash in the amount of $500 against the check. Mr. Healey testified that when appellant made out the counter check, he was unaware of the $700 deposit, but that he did check to make sure that she had sufficient funds in her account to cover the withdrawal.

State's Exhibit 4 is a check dated January 21, 1982, payable to Gregory Knight, and signed by James Cante.[1] It is for the amount of $600. Ethel Sedlecky testified that on January 23, 1982, as she was working at the auto teller of the Broadway-65th Street National City Bank branch, appellant came to the window as a passenger in an automobile driven by Gregory Knight. Mr. Knight stated that he had an account at National City Bank, and a signature on file at this particular branch. He had no signature card on file. Appellant verified that he was Gregory Knight and Knight produced a driver's license and stated his account number. Knight deposited one-half of the amount of the check, and cashed the other half.

An example of the appellant's handwriting, taken by the police, was submitted to the jury. The state offered no expert comparison of the handwriting.

Appellant testified that she went to the bank with Knight because he owed her money for a dog she had sold him. She admitted that she vouched for him at the

---

[1] Exhibit 4 is not in the file of record of this case, so this court is unable to compare the handwriting on this check to the other exhibits.

bank, and that he gave her $50 from the proceeds of the check.

The appellant assigns three errors for review.

## I

In Assignment of Error No. 1 appellant contends that forgery and uttering, and forgery and grand theft, are allied offenses.[2]

R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

Appellant contends that forging and uttering, and forging and grand theft, are allied offenses of similar import within the meaning of R.C. 2941.25, and that therefore several counts of the indictment must be dismissed.

### A. Forging and Uttering

The offenses of forging and uttering, as charged in the indictment, are contained within a single statute, which provides in relevant part:

"(A) No person, with purpose to defraud, or knowing that he is facilitating a fraud, shall do any of the following:

"* * *

"(2) Forge any writing so that it purports to be genuine when it is actually spurious * * *;

"(3) Utter, or possess with purpose to utter, any writing which he knows to have been forged." R.C. 2913.31(A)(2) and (3).

This court of appeals has previously ruled that forging and uttering a charge slip at a store, using another's credit card, represents but a single offense within the meaning of the multiple offense statute, R.C. 2941.25. *State* v. *Dobbins* (June 26, 1980), No. 41364, unreported; *State* v. *Patterson* (July 26, 1979), Nos. 39039 & 39058, unreported. The *Patterson* case also involved multiple convictions for forging and uttering checks.

Since the release of those decisions this court has adopted a new standard in cases involving the allied offense statute. *State* v. *Moralevitz* (1980), 70 Ohio App. 2d 20 [24 O.O.3d 36]. Two criteria must be met for two crimes to be considered allied offenses. First, the elements of the offenses must overlap to such a degree that one offense contains all of the elements of the other offense. Second, the crimes must not have been committed separately or with a separate animus (motive). This is in accord with decisions of the Ohio Supreme Court. See *State* v. *Rice* (1982), 69 Ohio St. 2d 422 [23 O.O.3d 374]; *State* v. *Logan* (1979), 60 Ohio St. 2d 126 [14 O.O.3d 373].

In some cases, the elements of one crime are implicit in another; most violent crimes against victims, for example, involve at least a momentary restraint of the victim's liberty, which under the literal terms of the criminal code constitutes kidnapping. See *State* v. *Donald* (1979), 57 Ohio St. 2d 73 [11 O.O.3d 242].

---

[2] Assignment of Error No. 1

"The offenses of (A) forgery (R.C. §2913.31(A)(2) ) and uttering (R.C. §2913.31(A)(3) ) and (B) forgery (R.C. §2913.31(A)(2) ) and grand theft (R.C. §2913.02(A)(3) ) are allied offenses [of] similar import within the contemplation of Ohio Revised [Code] 2941.25 in this case and therefore appellant's convictions for counts two (uttering), five (grand theft), seven (uttering), nine (uttering) and eleven (uttering) cannot stand."

Under Ohio law, however, the kidnapping is considered incidental to the other crime unless the restraint is prolonged, the confinement secretive, or the movement is substantial, or where the victim is exposed to a substantial increase in the risk of harm to him. *State* v. *Logan, supra.*

In the case of forging and uttering, the express elements of the two offenses do not overlap, but in many cases the uttering may be incidental to the forgery.[3] An example of such a case would be where a person forges a check, and momentarily possesses it for the purpose of using it. See *State* v. *Patterson, supra.*

The appellant, however, did not simply possess the forged checks, but presented them to her bank for deposit and payment. The "uttering" of these checks was not merely incidental to any forgery which previously occurred, but was wholly separate conduct, albeit performed for the same motive.

This case is also distinguishable on its facts from *Dobbins* and *Patterson* in that when a person purchases goods on credit with a stolen credit card, the forging and uttering occur simultaneously. The charge slip is signed and kept by the sales clerk. A stolen check, however, may be forged hours, days, or weeks before it is presented for payment.

The offenses of forging and uttering in the case at bar were not shown to be allied offenses of similar import.

### B. Forgery and Grand Theft

Appellant contends that forgery and grand theft are allied offenses of similar import. Each of these crimes contains an element not possessed by the other. Forgery includes the creation of a spurious writing, and theft[4] includes the obtaining of property of another. Furthermore, it was not shown that the forgery was merely "incidental" to the theft, in the way that kidnapping is to rape. Accordingly, these are not allied offenses of similar import.

The first assigned error is not well-taken.

### II

Appellant contends that her conviction for grand theft in count thirteen is not supported by sufficient evidence.[5]

The appellant was charged in the thirteenth count of the indictment with grand theft without the consent of the National City Bank. The prosecutor concedes that the theft was accomplished with the consent of the bank, by means of deception, and that the indictment should have charged appellant with theft by deception. Since this charge as written was not proven, the appellant is entitled to an acquittal on this count.

---

[3] "Forging" and "uttering" are defined in R.C. 2913.01(G) and (H):

"(G) 'Forge' means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when such writing in fact is not authenticated thereby.

"(H) 'Utter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display."

[4] "Theft" is defined at R.C. 2913.02, which states in relevant part:

"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

[5] Assignment of Error No. 2

"Appellant's conviction for grand theft in count thirteen is not supported by sufficient evidence denying her due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Art. I, §16 of the Ohio Constitution."

The second assigned error is well-taken.

### III

Appellant contends in this third assigned error that the court erred in refusing to grant appellant's motion to compel discovery pursuant to Crim. R. 16(B)(1)(c).[6]

The appellant's trial counsel requested the prosecutor to turn over the handwriting exemplar made by appellant, and a copy of any expert handwriting analysis, pursuant to its previous discovery requests. The prosecutor explained that no analysis had been performed, and that the exemplar was not subject to discovery. The trial court ruled in favor of the prosecutor.

The decision of the trial court was clearly erroneous under Crim. R. 16(B)(1)(c), which provides in part:

"(c) * * * Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant."

This rule implements *Brady* v. *Maryland* (1963), 373 U.S. 83, in which the Supreme Court ruled that the Due Process Clause requires the prosecution to disclose evidence favorable to the defense.

This error was potentially serious, because the prosecution failed to call a handwriting expert to compare the exemplar to the handwriting on the checks. Instead, this determination was left to the jury.

However, three facts mitigate the seriousness of the failure of the court to make the exemplar available for inspection to defense counsel. First, the defense did not contend that the exemplar was not genuine. Second, the defense did not call a handwriting expert of its own to testify that the handwriting on the checks did not match the appellant's handwriting or the handwriting on the exemplar. Third, the defense did introduce a fifth check, the counter check written by appellant on January 26, 1982, which could serve as a basis for comparison with the exemplar and with the stolen, forged checks.

We are persuaded that the error of the court in failing to allow full discovery was harmless, beyond a reasonable doubt. See *State* v. *Bayless* (1976), 48 Ohio St. 2d 73.

The third assignment of error is not well-taken.

Accordingly, the judgment of the trial court with respect to appellant's conviction for grand theft, based on the thirteenth count of the indictment, is vacated, and a judgment of acquittal is entered as to that conviction. With respect to the remaining convictions, the judgment of the trial court is affirmed.

*Judgment affirmed*
*as modified.*

Ann McManamon, J., concurs.

Parrino, P.J., concurs in judgment only.

---

[6] Assignment of Error No. 3

"The trial court prejudicially erred by refusing to grant appellant's motion to compel discovery of the handwriting exemplar when it was clearly discoverable under Criminal Rule 16(B)(1)(c). The introduction of the exemplar violated appellant's due process right to a fair trial."