Joseph M. ASH et al. *v.* STATE of Arkansas

CR 86-168                                    718 S.W.2d 930

Supreme Court of Arkansas
Opinion delivered November 10, 1986

*Pruitt & Hodnett*, by: *Ray Hodnett*, for appellants.

*Steve Clark*, Att'y Gen., by: *Lee Taylor Franke*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. ■ Act 862 of 1981 prohibits persons from promoting dog fighting, engaging in dog fighting, being present at a dog fight, or committing various acts connected with dog fighting. Ark. Stat. Ann. §§ 41-2918.1 and -2918.2 (Supp. 1985). At about 10:00 p.m. on May 10, 1985, after a search warrant had been obtained, ten law enforcement officers entered a building behind the residence of Darryl and Winifred Hook in Fort Smith. A dog fight between two American pit bull terriers was in progress. Fifteen persons were present. The police arrested all of them except the Hooks' 12-year-old son, who was video-taping the dog fight. The police took possession of the video-tape and of a copy of the rules for dog fighting, which was found in a filing cabinet in the building.

All of the persons arrested, except Mrs. Hook, were charged

with witnessing a dog fight presented as a public spectacle or with being present at a dog fight. Mrs. Hook was charged with promoting or engaging in dog fighting or possessing a dog for that purpose. Darryl Hook was among those arrested, but he was charged separately and is not a party to this case. The defense offered no evidence. The jury found all these appellants guilty and assessed a $3,000 fine against each of them except Mrs. Hook, who was fined $5,000. The Court of Appeals transferred the case to us as presenting an issue of construing the word "promotes" in the statute. Rule 29(1)(c).

The raided "garage" area, as described in the testimony and as shown by the video-tape, had been converted into an arena for dog fighting. The rules comprise five single-spaced typewritten pages. The rules provide that the pit is to be an enclosure not less than 14 feet each way, with sides 30 inches high and a carpeted floor. The pit in the Hooks' garage appears to have been in general conformity with the rules. The rules contemplate that each of the two dogs will be in the pit with its handler. The referee, if one is present, is also in the pit. At a signal from the referee the dogs begin to fight. The term "scratch" is not defined. One dog must scratch first; after that they scratch alternately until one fails to scratch and thereby loses the contest. No dog is required or allowed to "scratch to a dead dog"; in that event the live dog is the winner. There is a detailed rule for determining the winner or declaring a draw if the dogs quit fighting, though the handlers may allow the fight to continue. A dog that jumps out of the pit is automatically the loser.

The proof leaves no doubt that when the garage area was raided there was a dog fight in progress, and all the appellants except Mrs. Hook were present. Consequently counsel do not even attempt to argue that the evidence, if admissible, was not sufficient as to all the appellants except Mrs. Hook. The only argument made in behalf of the others is that the copy of the rules was not admissible, because the State did not show that the appellants were aware of its existence. The copy, however, was lawfully seized by the officers as being incidental to the arrests, as being within the immediate control at least of Darryl Hook, and as being evidence of the offense. Rules of Criminal Procedure, Rules 10.2(a)(i) and 12.1(d); *Moore* v. *State*, 244 Ark. 1197, 429 S.W.2d 122 (1968), cert. denied, 393 U.S. 1063 (1969). The rules

were relevant to the case, explaining the purpose of the pit and details shown by the video-tape. We have no hesitancy in affirming the convictions of those present during the dog fight.

Mrs. Hook's case is not equally as open-and-shut, but the proof as a whole leaves us with no doubt about its sufficiency to support the verdict. The State introduced the sworn testimony she had given in connection with her husband's trial; the jury was of course not informed of that setting for the testimony. She said she and her husband had formerly lived in California, where dog fighting was then legal. They fought the passage of a law to make it illegal, but the law was passed. They left California for that reason. "We moved here because there [were] no laws against dog fighting." She denied knowing that dog fighting had been made illegal in Arkansas. The Hooks had lived at the residence in Fort Smith for seven years when she testified. She said she and her husband had raised pit bulls for over ten years and owned six of the dogs at the time she testified. (The testimony and the photographs in the record show that the kennel building is of concrete block construction, with a concrete floor. It has a roof over it. There are 12 separate enclosures for dogs, in two stories having six pens each. The front of each enclosure consists of chain-link fencing attached to steel posts set in concrete. The entire structure is enclosed by a chain-link fence.)

Mrs. Hook testified that the pit, which takes up most of the garage space in the other outbuilding, was made for dog "rolling," by which two dogs are placed together to see if they will fight. "If they do, then you just don't let them." She conceded that a pit is not needed for dog rolling; the dogs could just be put on the ground. (The pit is apparently also a permanent installation, not put together for the one evening. In addition to the garage space, that outbuilding also contains a storage room and an apartment with two bedrooms and two baths. One bath is readily accessible to the pit area via the storage room. That accessibility would be of importance if the owners of the dogs agreed to abide strictly by the rules, which have detailed instructions for washing and drying each dog immediately before the dogs are put in the pit to fight.)

Mrs. Hook testified that on the morning of the day of the raid, May 10, she arose as usual at about seven o'clock. At some time later she left to report for work at her job at 3:30 p.m. Before

she left five or six people had arrived from "different places," some of them bringing dogs with them. When asked if the people were there to fight dogs, she replied, "I don't know," which was her usual response to questions about her awareness of dog fighting on the premises. She saw nothing wrong about dog fighting or about her 12-year-old son's having operated the video camera during the fight. She said she and her husband owned the dogs they had and that all four members of the family helped take care of the animals. The dogs like to exercise and would run for hours on a treadmill. At one point she did say about her husband, "He has fought dogs."

On that day Mrs. Hook returned home shortly before 11:00 p.m., after the raid and arrests had taken place. When she got home, the people who had brought their dogs before she left were still there and were among those arrested. She herself was arrested when she got home. It was not unusual, she testified, for numbers of people to show up at her house, but as far as she knew they were not there to fight dogs. She said that was the first time she even knew of dogs having been fought there.

▇ The argument on appeal is that since Mrs. Hook was away during the dog fight, the State's proof was not sufficient to support her conviction. That, however, depends upon whether the State produced substantial evidence to show her to be guilty of having "promoted" dog fighting, even though she did not engage in it that night. The word promote means to "further; encourage; advance." Webster's New International Dictionary (2d ed. 1934). The court included in its instructions to the jury two that are now pertinent: AMCI 103 explained that the jurors were not required to set aside their common knowledge, but had the right to consider the evidence in the light of their own observations and experiences in the affairs of life. AMCI 104 told the jurors that they were the sole judges of the witnesses' credibility and specified some of the matters to be considered in determining the truth or falsity of the witness's testimony.

▇ The Hooks had admittedly come to Arkansas partly because dog fighting was then legal here. Mrs. Hook, no matter how inactively she may have participated in the dog fighting, knew that a structure had been built in the back yard for the specific purpose of housing pit bull dogs, with accommodations to

contain dogs other than their own. She was familiar with the pit and knew it could be used for dog fighting. Both the kennels and the arena were of a permanent nature, solidly built. Mrs. Hook knew that her husband had fought dogs; she herself saw nothing wrong with dog fighting. She realized that numbers of people came to the house from time to time and brought pit bull terriers with them. She must have known that something was going on to attract those visitors. She and her children had helped to take care of the dogs, washing them and feeding them. In short, from the evidence presented the jury could reasonably have concluded that Mrs. Hook was aware that on property owned by her and her husband an arena had been built for the specific purpose of clandestine dog fighting and that she was aware that it was being so used. The jury could find that she "promoted" dog fighting. The direct and circumstantial evidence to support the jury's verdict is more than sufficient to meet the test of substantiality.

Affirmed.