**AMERICAN DOG OWNERS ASSOCIATION, INC., et al.,
Plaintiffs,**

v.

**DADE COUNTY, FLORIDA, et al., Defendants.**

No. 89–771–CIV.

United States District Court,
S.D. Florida.

Nov. 30, 1989.

Steven Wisotsky, Ft. Lauderdale, Fla., and William Berger, Miami, Fla., for plaintiffs.

Robert A. Ginsbury, Dade County Atty., and Cecilia M. Altonaga and Thomas W. Logue, Asst. County Attys., Miami, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HOEVELER, District Judge.

THIS CAUSE came before the Court for a two and one-half day trial commencing July 10, 1989. Plaintiffs' complaint presents a pre-enforcement facial challenge to the constitutionality of Dade County Ordinance No. 089–22 on the basis that the ordinance is impermissibly vague. The ordinance purports to regulate ownership of pit bull dogs ("pit bulls") by requiring registration, enclosure or leashing and muzzling of existing pit bull dogs and by prohibiting the acquisition of new ones. The ordinance defines pit bull dogs by referring to standards set forth by the American Kennel Club ("AKC") and the United Kennel Club ("UKC"), providing that dogs substantially conforming to those characteristics will be considered pit bulls. Plaintiffs' challenge to this ordinance rests on their contention that the definitional sections are so vague and uncertain as to deprive plaintiffs of their liberty and property without due process of law. The complaint seeks declaratory and injunctive relief as well as damages.

Both parties presented witnesses, including experts and trial exhibits. On the basis of testimony, evidence and arguments presented by both sides, as well as post-trial submissions, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I. The parties

Plaintiff, Responsible Dog Owners of Dade ("RDOD") is an unincorporated association created to advance the interests of dog owners and to defend them from hostile legislation. RDOD is comprised of dog owners who live in Dade County or who, as dog fanciers, are potentially subject to the challenged ordinance. Plaintiff American Dog Owners Association, Inc. ("ADOA") is a Michigan nonprofit corporation formed for the advancement and protection of the interests of dog fanciers. ADOA is a national organization whose purpose is to educate people, teach responsible dog ownership and to advocate legislation which is non-breed specific. Many ADOA members live in Dade County and may be subject to the challenged ordinance because of dog ownership or exhibition.

Plaintiff, Robert Sanchez is President of RDOD, a Dade County resident and owns two dogs which may be subject to the ordinance. One of his dogs, Rex, is a purebred animal registered with the United Kennel Club ("UKC") as an American Pit Bull Terrier. The other dog, Whiskey, is unregistered and of uncertain lineage. Whiskey's dog license states that he is a mixed breed. Sanchez claims that he does not know whether either of his dogs is covered by the ordinance, despite Rex's registration and an animal control officer's identification of Whiskey as a pit bull. Sanchez states that he does not know what the definitional terms of the ordinance mean and thus does not know whether his dogs have the physical characteristics set forth in the definitional standards. Moreover, Sanchez complains that if the ordinance is applied to him, he will no longer be able to participate in his favorite sport of shitsun competition (apparently some form of search and rescue exercise), because he could not participate if his dogs were leashed and muzzled.

Defendant, Metropolitan Dade County is the law-making body for Dade County, Florida which adopted Ordinance No. 089–22, amending Chapter 5 of the Metropolitan Dade County Code. Defendant, Zoraida

Diaz–Albertini is the Director of the Dade County Animal Services Division and is responsible for enforcing the challenged ordinance.

## II. The Ordinance

The Dade County Commission adopted Ordinance No. 089–22 on April 4, 1989, effective April 14, 1989. Legislative fact findings included facts indicating that the selective breeding of certain characteristics in pit bull dogs made these dogs a danger to health and welfare different from the dangers presented by other breeds. The Preamble to the Ordinance contains the several factual findings made by the Board of County Commissioners of Dade County that pit bull dogs require special regulation because of their dangerous propensities. These findings were not challenged by the plaintiffs, and are accepted as true for the purposes of this preenforcement challenge. The Ordinance is reproduced in full in Appendix A. Enforcement of the ordinance was postponed until July 14, 1989.

The ordinance purports to protect the community by confinement and muzzling requirements. As indicated, ninety days after the effective date of the ordinance, no pit bull dogs may be acquired or brought into Dade County (Ord.Sec. 5–17.6(b).

At the time trial commenced, only seven pit bull dogs had been registered with Animal Control pursuant to the ordinance. A great number of licensed dogs are listed as pit bulls on their Dade County dog licenses. Failure of a pit bull dog owner to comply with the Ordinance subjects the owner to civil fines and to possible destruction of the dog by a court of competent jurisdiction. Dade County Code at Sec. 8CC–10. By its terms, enforcement of the penalty provisions of the Ordinance commences on July 14, 1989. Ordinance at SEc. 5–17.6(a).

Plaintiffs initiated this suit on April 21, 1989, and after several amendments to their pleadings, raised the following issues for resolution by the Court: (a) are the definition of pit bull dog and the exceptions from confinement in the Ordinance so vague that they violate due process of law under the federal constitution; (b) does the Ordinance violate Florida constitutional provisions by delegating enforcement to the executive branch without standards. This is a pre-enforcement challenge.

## III. Identification of Pit Bull Dogs

Plaintiffs contend that there is no such thing as a pit bull dog. Rather, they contend that there are three breeds which the ordinance in question has mistakenly lumped together. Further, plaintiffs contend that the standards set forth by the kennel clubs and incorporated by the Dade County ordinance were never meant to be used for identification, but only as a reference regulating the owners of existing pit bull dogs and banning acquisition of these dogs after July 13, 1989.[1] The ordinance applies on its face to any dog that "exhibits those distinguishing characteristics" which "substantially conform" to American Kennel Club ("AKC") or United Kennel Club ("UKC") standards. The ordinance also states that technical deficiencies in a dog's conformance to the standards will not prevent it from being considered a pit bull. The definitional standards in the ordinance encompass characteristics of dogs from three breeds recognized by the AKC and UKC: American Staffordshire Terriers, American Pit Bull Terriers and Staffordshire Bullterriers. The ordinance defines the breed of dog not according to bloodlines, but according to physical characteristics. Owners unsure about the breed of their dogs may bring them to Animal Control Division for a determination.[2]

Existing pit bull dogs ("pit bulls") are controlled by requiring owners to register the dogs with Metro Dade Animal Services

---

1. Provisions requiring that owners of pit bull dogs insure or demonstrate evidence of financial responsibility have been withdrawn pending review, according to the testimony of Dade County.

2. The ordinance in question incorporates by reference Chapter 8(c)(C) of the Dade County Code. This section sets out administrative review procedures and provisions for review by a court of competent jurisdiction. Thus, dog owners who contest the county's categorization of their dogs may seek administrative and judicial review.

Division and to confine pit bulls indoors or in a secure, totally enclosed, locked pen unless muzzled and leashed. Dogs participating in lawful dog shows or engaged in hunting in an authorized area under competent supervision are exempted from in judging dogs already identified by bloodlines as belonging to one of the kennel clubs' three breeds. Thus, the plaintiffs contend that the standards set forth in the ordinance are meaningless.

Despite plaintiffs' contention that there is no such animal as a pit bull, plaintiffs' own experts have written articles about their pedigreed dogs referring to them by the common nickname of pit bull. At trial, these experts identified photographs of dogs as pit bulls, rather than delineating the dogs into any one of the three breeds recognized by the kennel clubs. Moreover, veterinarians commonly identify dogs as pit bulls—rather than one of the three recognized breeds—by their physical characteristics. Two veterinarians, testifying for the defendants, stated that they are often called upon to identify a dog's breed because it is an integral part of the animal's health record. This they do by reference to standard physical characteristics. Generally, these veterinarians testified, owners themselves know what breed their dog is.

The trial testimony shows that most dog owners know or have a preconceived idea of, the breed of the dog they possess. (T.R. at 394). The term pit bull, alone, is a descriptive term that conjures up a picture of a particular breed of dog (T.R. at 105), and is a critical component of the definition of this dog in the Ordinance. (T.R. at 110). Breed identification based on appearance is, of course, necessarily a valid judgment. (T.R. at 93).

Although no dog registry recognizes a breed of dog by the name pit bull, the term is often used as nickname in *Bloodlines*, the official magazine of the United Kennel Club. (T.R. at 135–36). Pit bull is used by persons having an extensive background in the UKC and AKC dogs, as for example, former plaintiff Marilyn Brubaker Thomp-

son. (T.R. at 518). Marilyn Thompson has used the term pit bull dog to refer to her dogs, which are cross registered as UKC-registered American Pit Bull Terriers, and AKC American Staffordshire Terriers. (T.R. at 520–21). Testimony was received concerning various dog clubs which use the term pit bull in their name and whose special emphasis is on American Pit Bull Terriers and American Staffordshire Terriers. (T.R. at 516, 521–24).

The term "pit bull" dog is widely used in the media, in decisional law, by veterinarians, animal control officers, and citizens of Dade County. (T.R. at 357–370). Testimony was heard from several veterinarians that pit bull dog is a designation routinely used to identify the three breeds listed in the Ordinance. (T.R. at 395). Animal control officers have been using the term on a daily basis for years. Over one thousand residents of the County own dogs, which either they or their veterinarians have identified as pit bulls when applying for dog licenses.

Pit bull dogs share a typical physical appearance because of their genetic background, notwithstanding the fact that there is variability in the physical appearance, or phenotype, of these dogs. (T.R. at 217). That distinctive phenotype, according to sources reported in the official UKC publication, *Bloodlines*, has hardly changed in the last forty years. (T.R. at 133–34). The pit bull is a distinctive dog in its appearance.

Veterinarians routinely identify dogs by their breed for record keeping and diagnostic purposes. (T.R. at 99, 100). The most important thing veterinarians look for in trying to identify the breed of a particular dog is the dog's physical appearance and conformation. (T.R. at 392).

Pit bulls vary in size, color and head and body shape. Most pit bull dogs have no pedigree papers. Experts for both the plaintiffs and the defense testified that they have been wrong in their identification of pit bulls, by varying percentages.[3] Lt.

___

**3.** None of the experts questioned confused the picture of a wire-haired terrier for a pit bull,

however. The difficulty in identification ap-

Armand Miller, Supervisor of Dade County's Animal Control Division, stated that his trained officers will be able to correctly identify pit bulls 90 to 95% of the time. Although there was testimony that a new genetic fingerprinting technique may be developed in the short-term future, no such scientific testing is currently available.

Despite the absence of scientific testing procedures for dog breeds, however, and the absence of pedigree in the majority of dogs owned in Dade County, the evidence demonstrated that the majority of dog owners know the breed of their dogs. Moreover, dog owners may request a binding determination from Animal Control if they are unsure about a breed. Thus, while the identification of pit bulls may be difficult in some situations, the facts adduced at trial establish that there are certain conforming characteristics shared by pit bull dogs.

Veterinarians opine that ordinary citizens may be trained to identify the breed of a dog based on the dog's physical appearance. In fact, one resident of the County gave testimony that he was able to determine the breed of the dog he owned after comparing its physical conformation to that of other pit bulls he had seen in the media. (T.R. at 457).

At least one expert testified that he would not recommend using a definition of pit bull dog which depended on registration with one of these two national dog registries because there are many pit bull dogs that are not registered. Such a definition would only address a very small part of the pit bull problem. (T.R. at 405–06).

Presently, there exists no better method of identifying a pit bull dog than by its appearance. (T.R. at 418–19). Even if a scientific method is developed to identify breeds of dogs, an enforcement scheme will still depend on initial visual identification. (T.R. at 438–39).

A breed standard is a description of the ideal phenotype or physical conformation of each recognized breed to serve as a word pattern by which dogs are judged at shows. (T.R. at 87–88). However, breed standards peared to be primarily with dogs of mixed

are also used by people interested in dogs, and appear routinely in dog magazines. (T.R. at 137, 406–07).

The AKC or UKC standards at issue describe the pit bull dog as well as words can do. (T.R. at 406). Most of the terms in the standards are understandable to reasonably intelligent persons. (T.R. at 408). With a little effort, and possibly some external assistance, an interested person can utilize the standards in the Ordinance to identify the breed of a particular dog. (T.R. at 420, 449–50).

Approximately 60 dogs a day are secured by Dade County Animal Control specialists, or enforcement officers, and each is identified by breed for record keeping purposes and in order to facilitate reuniting the dog with its owner. (T.R. at 59–50). While the County has never had a breed-specific ordinance such as the one in question (T.R. at 29–30), it is routine in the Animal Control industry to identify dogs by breed based on their physical appearance.

After passage of the Ordinance, Animal Control officers received training in ways to identify a pit bull dog and on the terms used in the standards. (T.R. at 33–34). In addition to the standards contained in the Ordinance, the officers have a breed book, other visual aids, and their professional judgment and experience to assist them in identifying a dog as a pit bull. (T.R. at 37–44).

Since the enactment of the Ordinance, the County Animal Control Services Division has established standard operating procedures ("SOP") designed to govern the activities of its enforcement personnel vis-a-vis the Ordinance. The SOP includes a requirement that Animal Control render a binding opinion, upon request, as to whether a dog is subject to the provisions of the Ordinance, and if it is determined not be a pit bull, the dog's owner is given an exclusion certificate. Plaintiffs' Trial Exhibit 4.

Animal Control specialists, because of their experience in handling and identifying pit bull dogs on a daily basis, will be able to identify pit bulls with accuracy. They will breed.

use the standards in the Ordinance to assist them, as well as the various other tools at their disposal. (T.R. at 62–63).

By the time of the trial, at least seven County residents have registered their pit bulls with the County under the provisions of the Ordinance. The photographs of the pit bulls in the registration files show dogs which substantially conform to the standards used in the Ordinance. (T.R. at 43, 67–69).

Persons familiar with dogs can use the standards in the Ordinance to identify a pit bull dog. (T.R. at 110).

### IV. Enforcement

Lt. Armand Miller, Supervisor of Animal Control Division, testified that in addition to the standards set forth in the ordinance itself, his officers have been given training by a veterinarian on the identification of pit bulls. The officers have also been given copies of *Simon & Shuster's Guide to Dogs* (1980), a guide that experts for both sides recognized as authoritative. The standard operating procedures manual carried by the officers has additional pictures and physical standards to aid the officers in their identification. The Gaines Guide to American Dogs, a poster recognized by all the testifying experts as authoritative, is prominently displayed in the Animal Control workplace. The officers have been instructed to issue citations for violation of the ordinance only to those owners whose dogs they have positively identified as pit bulls.

### CONCLUSIONS OF LAW

Plaintiffs brought this action for declaratory judgment under the Civil Rights Act, 42 U.S.C. §§ 1983–88, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. This Court has jurisdiction under 28 U.S.C. §§ 1331(a), 1343(3) and (4).

■ Prior to trial, defendants requested that the Court abstain from exercising jurisdiction until such time as the state courts had been given the opportunity to interpret the legislation at issue. A motion to abstain is directed to the sound discretion of the trial court. *See Hawaii Housing Au-*

*thority v. Midkiff,* 467 U.S. 229, 237, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). Furthermore, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Because a Florida court previously considered similar issues and interpreted language identical to the language at issue here, albeit in a city ordinance, *see State v. Peters,* 534 So.2d 760 (Fla. 3d DCA 1988), *rev. denied,* 542 So.2d 1334 (Fla.1989), the Court declines to abstain. Additionally, the matter presents an urgency which militates against delay.

■ Federal courts must proceed cautiously when considering attacks on the constitutionality of the state statutes, *see Cotton State Mutual Insurance Company v. J.O. Anderson,* 749 F.2d 663, 667 (11th Cir.1984) (citation omitted), so that if a statute can be made constitutionally definite by reasonable construction, this Court must apply such a construction. *See Jones v. Continental Insurance Co.,* 670 F.Supp. 937, 943 (S.D.Fla.1987).

This matter was presented from an evidentiary and argument standpoint on the narrow issue of whether or not the ordinance is facially vague. The issues were presented in such a way that the court has regarded the action of the county as legislatively proper from the standpoint of the basis and need for the ordinance. As suggested elsewhere in this memorandum, plaintiffs, while not agreeing, did not take issue with the factual basis for the County's legislative action. Rather, plaintiffs elected to concentrate their constitutional attack on the facial invalidity of the ordinance. Thus, the court accepts as given that the promulgation of this ordinance was a valid exercise of the police power and is rationally related to a legitimate government interest.

Plaintiffs having confined their challenge to the facial validity of the ordinance, contend that its standards are so vague that no reasonable person could know whether or not a particular dog was subject to the ordinance. Thus, plaintiffs assert that the

ordinance not only fails to give notice to dog owners who may not be able to discern from the standards whether their dogs are subject to the ordinance, but also fails to establish minimal guidelines to govern law enforcement.

■ Vague laws fail to provide notice and thus may trap the innocent. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Moreover, in order to prevent arbitrary and discriminatory enforcement, laws must provide explicit standards of enforcement. *Id.* However, there is no requirement that the language of a legislative enactment be mathematically precise. *Id.* at 110, 92 S.Ct. at 2300. All that is required is that the people to whom the statute is addressed will, if they are of common intelligence, be placed on notice as to what the law forbids. *High Ol' Times v. Busbee,* 673 F.2d 1225 (11th Cir.1982).

The fourteenth amendment due process guarantee against vagueness requires that laws provide fair warning to persons of ordinary intelligence of the conduct prohibited, and standards to protect against arbitrary and discriminatory enforcement. *Florida Businessmen, etc., v. City of Hollywood,* 673 F.2d 1213, 1218 (11th Cir.1982) (citations omitted). *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). In this pre-enforcement challenge, the principal question is whether the law affords fair warning of what is proscribed. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 503, 102 S.Ct. 1186, 1195–96, 71 L.Ed.2d 362 (1982), *rehearing denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982).

■ The Constitution tolerates a greater degree of vagueness in enactments with civil rather than criminal penalties. *Cf., High Ol' Times,* 673 F.2d at 1229; *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948). *See also Flipside,* 455 U.S. at 498–99, 102 S.Ct. at 1193 ("the Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.") (citations omitted). The Ordinance here is civil in nature.

■ The question thus facing this court is whether the instant ordinance provides sufficient guidance to dog owners of ordinary intelligence to register and properly restrain pit bull dogs they already own and to abstain from purchasing new ones. There is no need for legislation to give fair warning except to those potentially subject to it. *Flipside,* 455 U.S. at 501 n. 18, 102 S.Ct. at 1194 n. 18. The relevant inquiry is therefore whether the average dog owner is given fair warning.

The Ordinance regulates a group, the dog owning public, that has a special knowledge of the matter being regulated. The uncontradicted testimony of the various veterinarians in this case reflects that most dog owners know the breed of their dog. In fact most dog owners look for and select a dog of a particular breed because of their knowledge of or interest in a particular breed. For this reason, too, the Ordinance is subject to a less strict standard of review. *Fleming v. United States Department of Agriculture,* 713 F.2d 179, 194 (6th Cir.1983) ("When the persons affected by the regulations are a select group with specialized understanding of the subject being regulated the degree of definiteness required to satisfy due process concerns is measured by the common understanding and commercial knowledge of the group.")

There was ample testimony that most people know what breed their dogs are. Although the plaintiffs and their experts claim that the ordinance does not give them enough guidance to enable owners to determine whether their dogs fall within its scope, the evidence established that the plaintiffs themselves often use the term "pit bull" as a shorthand method of referring to their dogs. Numerous magazine and newspaper articles, including articles in dog fancier magazines, refer to pit bull dogs. Veterinarians typically refer to the three recognized breeds and mixed breeds with conforming characteristics as pit bulls. In addition, the veterinarians who

testified stated that most of their clients know the breeds of their dogs.

The agency responsible for enforcement of the Ordinance, Dade County Animal Services Division, promulgated a set of Standard Operating Procedures, one of which permits dog owners who are in doubt as to whether their dog is a pit bull to obtain a binding, written determination from Animal Control that the dog is or is not a pit bull dog. *See* SOP, para. 4. This administrative procedure reduces the level of scrutiny with which this Court will review the challenged Ordinance since such a procedure lessens the amount of precision in definition required by due process. *See e.g., Record Head Corporation v. Sachen,* 682 F.2d 672, 674 (7th Cir.1982) ("[E]conomic regulation may be less precise than other forms of legislation because the entities affected by it are ... *more able to clarify uncertainties through inquiry or administrative proceedings."*) (emphasis added); *Flipside,* 455 U.S. at 498, 102 S.Ct. at 1193 (less strict standard of review for vagueness is in order when "the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.").

In a vagueness challenge, the plaintiff bears the burden of showing that the law in question is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). Such a provision simply has *no* core." *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1979).

The language of the ordinance explicitly covers pit bull dogs. The evidence clearly demonstrates that there is some breed or mixed breed of dog that is commonly referred to as a pit bull. Thus, the law affords fair warning of what is proscribed. *See Flipside,* 455 U.S. at 502, 102 S.Ct. at 1195 (the principal inquiry of facial vagueness is whether the law affords fair warning of what is proscribed). The Southern District of Ohio, in facing a similar vagueness challenge to a local pit bull ordinance, found the ordinance to be constitutionally valid even though the ordinance contained only the terms pit bull terrier, Staffordshire Bull Terrier or American Staffordshire Terrier, without including physical characteristics or other definitions.[4] *Vanater v. Village of South Point,* 717 F.Supp. 1236 (S.D.Ohio 1989). An Ohio appellate court upheld another Ohio ordinance which did not set forth any definition of a pit bull. *City of Lima v. McFadden,* No. 1–85–22, 1986 WL 7474 (Ohio Ct.App. June 30, 1986). The ordinance before this court, in contrast, provides as a further aid to dog owners, an appendix with the physical characteristics set forth as standards for the breed by the AKC and the UKC.

An ordinance nearly identical to the ordinance before this court was upheld as constitutional (by a Florida appellate court) in the face of vagueness, due process and equal protection challenge. *State v. Peters,* 534 So.2d 760 (Fla.Dist.Ct.App.1988). Judge Pearson held that although the definitions of a pit bull might lack mathematical certainty, those people to whom the ordinance was addressed would be able to give the term pit bull a sufficiently clear meaning to enable them to correctly apply the statute. *Id.* at 767. The terms in the ordinance were, according to the Third District Court well enough understood by pit bull owners to enable them to determine whether their dogs fell within the proscriptions of the ordinance. *Id.* at 768. Similarly, in the instant case, while the terms may lack mathematical certainty, the evidence showed that the terms are well enough

---

**4.** The definitional section in the Ohio ordinance defined a pit bull terrier as

any Staffordshire Bull Terrier or American Staffordshire Terrier breed of dog, or any mixed breed of dog which contains, as an element of its breeding the breed of Staffordshire Bull Terrier or American Staffordshire

Terrier as to be identifiable as partially of the breed of Staffordshire Bull Terrier or American Staffordshire Terrier by a qualified veterinarian duly licensed by the State of Ohio. *Vanater v. Village of South Point,* 717 F.Supp. 1236 (S.D.Ohio 1989) (citing Ordinance No. 87–6 of the Village of South Point).

understood by pit bull owners to give them fair notice of the ordinance's proscriptions.

If, after consulting the ordinance, an owner remains in a quandary as to whether the ordinance applied to him, the owner could seek guidance from a dictionary, a guidebook to dogs or from his or her veterinarian. Further resort could be had to Animal Control Services for a binding determination as to the breed of the dog. The county may adopt further administrative regulations that may sufficiently narrow potentially vague and arbitrary interpretations of the ordinance. *See, Flipside,* 455 U.S. at 504, 102 S.Ct. at 1196 (further steps may be taken to minimize the dangers of arbitrary enforcement). These guidelines and aids to identification are not, strictly speaking, relevant to the court's vagueness inquiry, however. *Flipside,* 455 U.S. at 502, 102 S.Ct. at 1195.

A court faced with a pre-enforcement facial challenge to the alleged vagueness of a legislative enactment that does not reach constitutionally protected conduct[5] should uphold the challenge only if the enactment is impermissibly vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Here, the object regulated by the Ordinance is dogs having the physical appearance of pit bulls. Plaintiffs claim that "[d]ogs, too, are members of the family, and the owner's choice or decision to make that choice is entitled to substantial constitutional protection." Plaintiffs' Trial Brief at 11. The weight of authority, however, demonstrates that ownership of dogs does not implicate fundamental constitutional rights. "Property in dogs is of an imperfect or qualified nature and they may be subject to peculiar and drastic police regulations by the state without depriving their owners of any federal right." *Nicchia v. People of State of New York,* 254 U.S. 228, 230–31, 41 S.Ct. 103, 104, 65 L.Ed. 235 (1920). "Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the state, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." *Sentell v. New Orleans & C.R. Co.,* 166 U.S. 698, 17 S.Ct. 693, 695, 41 L.Ed. 1169 (1897).

Because the Ordinance does not impact any fundamental right, to prevail Plaintiffs must show that the Ordinance is "impermissibly vague in all of its applications." *"The possibility of a valid application precludes facial invalidity".* High Ol' Times, Inc., v. Brisbee, 673 F.2d 1225, 1228 (11th Cir.1982) (emphasis added). *See also Flipside,* 455 U.S. at 495, n. 5, 102 S.Ct. at 1191, n. 5, quoting from *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed.2d 505 (1974) (a facial challenge, such as this one, requires that the law be "invalid *in toto*—and therefore incapable of any valid application."); *Florida Businessmen,* 673 F.2d at 1218 ("To succeed on their facial vagueness challenge, however, the merchants must demonstrate that the statute and the ordinance are impermissibly vague in all of their application.")

Plaintiffs have failed to sustain their burden of proof. The evidence of record shows that since the passage of the Ordinance, at least seven County residents have complied with the registration/confinement requirements of the Ordinance. The Court heard testimony that the dogs registered under the Ordinance substantially conformed to the physical appearance of the pit bull. Clearly, these registrations show that the Ordinance can be and has been validly applied. A facial challenge in this context means that there is no valid application possible. *Id.* 455 U.S. at 494 n. 5, 102 S.Ct. at 119 n. 5. Clearly there are some applications of this ordinance that are valid. The ordinance purports to regulate pit bull ownership. Those people who know they have pit bull dogs cannot complain that the statute is vague as applied to them. Plaintiff Sanchez, for example, has at least one purebred dog he knows to be what is commonly referred to as a pit bull.

---

5. Although most vagueness challenges concern laws which define conduct rather than property, courts have frequently upheld against vagueness challenges laws which—like pit bull ordinances—describe property. *State v. Peters,* 534 So.2d 767 n. 12 (Fla.Dist.Ct.App.1988).

# 1542

Dade County dog owners who have already registered their dogs as pit bulls under the ordinance also know what kind of dogs they have. These people have clearly had notice that their dogs are subject to regulation by the ordinance. Thus, the ordinance is not unconstitutionally vague as applied to them, and, therefore, there are some applications of the ordinance that are valid.

The term "pit bull" has appeared in over 30 published judicial opinions [6] and in such magazines of general circulation as *Newsweek, U.S. News & World Report, Time, Ladies Home Journal,* and *Sports Illustrated.* In South Florida, the local newspaper, THE MIAMI HERALD, has published over 30 articles using the term pit bull in the last several years.

Ordinances regulating pit bulls, which define the breed merely by using the name pit bull and without further description or the addition of the subject breed standards, have been upheld against similar vagueness challenges. In *Vanater v. Village of South Point,* 717 F.Supp. 1236 (S.D.Ohio 1989), previously referred to, the federal district judge upheld an ordinance which named the breeds but did not further define them. The court reasoned:

> The Court concludes that the definition of a Pit Bull Terrier in this ordinance is not unconstitutionally vague. An ordinary person could easily refer to a dictionary, a dog buyer's guide or any dog book for guidance and instruction; *also, the American Kennel Club and United Kennel Club have set forth standards for Staffordshire Bull Terriers and American Staffordshire Terriers to help determine whether a dog is described by any one of them.*

*Vanater,* at 1244 (emphasis added). *See also Garcia v. Village of Tijeras,* 108 N.M. 116, 767 P.2d 355, 360 *cert. denied,* 107 N.M. 785, 765 P.2d 758 (1988) (an ordinance banning dogs "known as American Pit Bull Terriers" is not unconstitutionally vague); *Hearn v. City of Overland Park,* 244 Kan. 638, 772 P.2d 758 (1989); *State v. Robinson,* 44 Ohio App.3d 128, 541 N.E.2d 1092 (1989) (upholding against a vagueness challenge an ordinance that regulated dogs "commonly known as pit bull dogs"); *City*

**6.** *See, e.g.,* 1. *Gibbons v. Chavez,* 160 Ariz. 73, 74, 770 P.2d 377, 378 (Ariz.App.1988)

2. *Berry v. Superior Court,* 208 Cal.App.3d 783, 256 Cal.Rptr. 344, 356 (1989)

3. *Cronin v. Chrosniak,* 145 A.D.2d 905, 536 N.Y.S.2d 287 (1988)

4. *Hayes v. McFarland,* 535 So.2d 568, 569 (La.App.1988)

5. *State v. Livingston,* 420 N.W.2d 223, 225 (Minn.App.1988)

6. *Meyers v. Haskins,* 140 A.D.2d 923, 528 N.Y.S.2d 738, 739 (1988)

7. *Hampton v. Hammons,* 743 P.2d 1053, 1054 (Okl.1987)

8. *Vasques v. Lopez,* 509 So.2d 1241 (Fla. 4th DCA 1987)

9. *White v. Whitworth,* 509 So.2d 378, 379 (Fla. 4th DCA 1987)

10. *Champagne v. Spokane Humane Society,* 47 Wash.App. 887, 737 P.2d 1279, 1280 (1987)

11. *Ward v. Young,* 504 So.2d 528 (Fla. 2d DCA 1987)

12. *American States Ins. Co. v. Allstate Ins. Co.,* 484 So.2d 1363, 1364 (Fla. 5th DCA 1986)

13. *State v. Digilormo,* 505 So.2d 1154, 1155 (Fla. 3d DCA 1987)

14. *Ash v. State,* 290 Ark. 278, 718 S.W.2d 930, 931 (1986)

15. *Alaskan Village v. Smalley,* 720 P.2d 945, 947 (Alaska 1986)

16. *Anderson v. Walthal,* 468 So.2d 291, 293 (Fla. 1st DCA 1985)

17. *Barton v. State,* 253 Ga. 478, 322 S.E.2d 54, 55 (1984)

18. *Williams v. State,* 462 So.2d 771, 773 (Ala.Cr.App.1984)

19. *Hargrove v. State,* 253 Ga. 450, 321 S.E.2d 104, 106 (1984)

20. *State v. J.H.B.,* 415 So.2d 814 (Fla. 1st DCA 1982)

21. *Carter v. Stuart,* 433 So.2d 669 (Fla. 4th DCA 1983)

22. *Burgan v. State,* 258 Ga. 512, 371 S.E.2d 854, 856 (1988)

23. *State v. Sims,* 529 So.2d 454, 458 (La.App.1988)

24. *State v. Houtenbrink,* 130 N.H. 385, 539 A.2d 714, 716 (1988)

25. *Bowell v. State,* 728 P.2d 1220, 1221 (Alaska App.1986)

26. *People v. Collier,* 426 Mich. 23, 393 N.W.2d 346, 347 (1986)

27. *State v. Rushing,* 103 N.M. 333, 706 P.2d 875, 876 (N.M.App.1985)

28. *Wortham v. State,* 689 P.2d 1133, 1136 (Alaska App.1984)

29. *State v. Hunter,* 12 Ohio App.3d 75, 466 N.E.2d 183 (1983)

30. *Wylie v. Gresch,* 191 Cal.App.3d 412, 236 Cal.Rptr. 552, 554 (1987)

31. *U.S. v. Garcia,* 866 F.2d 147, 149 (6th Cir.1989)

*of Lima v. McFadden*, No. 1–85–22, 1986 WL 7474 (Ohio App.1986) (upholding ordinance that names but does not otherwise define "pit bull dogs").

As suggested previously, ordinance provisions need not be cast in terms that are mathematically precise so long as they give fair warning of the conduct proscribed, in light of common understanding. *Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir.1980), *cert. denied*, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980) ("school" and "sexually oriented commercial enterprise," not vague). *See also Miller v. California*, 413 U.S. 15, 28, 93 S.Ct. 2607, 2617, 37 L.Ed.2d 419 (1973) (absolute "god-like precision" not required by the Constitution). "[F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of government inevitably limit the specificity with which the legislatures can spell out prohibitions." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952). *See also Ferguson v. Estelle*, 718 F.2d 730, 734 (5th Cir.1983) (there are inherent limitations in the precision with which concepts can be conveyed by the English language).

Plaintiffs' claim that the law violates the Florida constitutional doctrine of unlawful delegation of legislative authority to the executive branch must also fail. The ordinance delegates no greater discretion to enforcement officers than do drug paraphernalia laws.

While Plaintiffs' final pleading and Trial Brief contain a claim that the Ordinance's exceptions to the confinement requirements are vague, i.e., what is a "lawful dog show" or the sport of hunting by a "competent person" in "an authorized area," no evidence was presented to show how these exceptions violate the due process guarantee against vagueness. Certainly, there was much testimony by Plaintiffs' witnesses concerning dog shows, dog show judges, and the goings on of dog shows. The distinction between a lawful and unlawful dog show is not such as would be incapable of being understood or discerned by the public. Similarly, Florida laws on hunting requirements, and common understanding that to engage in the sport of hunting one must first consult and comply with the legal restrictions imposed by the State, make the challenge to the hunting exemption meritless.

## CONCLUSION

Based upon the substantial evidence presented at trial, this court finds that Dade County Ordinance No. 89–022 provides sufficient guidance to dog owners, both in its explicit reference to pit bull dogs, and in its definitional section, to enable pit bull owners to determine whether their dogs fall within the proscriptions of the ordinance. Whether the ordinance will be applied in a discriminatory fashion is a question that cannot be determined in the context of this pre-enforcement action. Certainly there are some applications of the ordinance which pass constitutional muster. As long as the enactment is not impermissibly vague in all its applications, this court must uphold its constitutionality. Upon consideration of the evidence presented at trial, the pleadings, memoranda, exhibits and arguments of counsel and upon application of the controlling authority, this court finds that plaintiffs have failed to meet their burden of proof and that the Court is required to uphold the constitutionality of Dade County Ordinance No. 089–22.

Accordingly, this Court will grant judgment in favor of the defendants, Dade County and Zoraida Diaz–Albertini and against the plaintiffs, American Dog Owners Association, Inc., et al. A separate judgment will be entered on this day.

DONE AND ORDERED.

## FINAL JUDGMENT

THIS CAUSE came before the Court after the Plaintiffs filed suit against the Defendants contending that the Dade County Ordinance 089–22 was facially unconstitutional and defective in other respects. The Court, heard and viewed evidence, permitted arguments of counsel and post-trial

submissions. The Court being advised in the premises has entered on this day, Findings of Fact and Conclusions of Law determining that the Plaintiffs have failed to sustain the burden of proving that the judgment should be entered in favor of the defendants. It is, therefore, ordered that judgment be and it is hereby entered in favor of DADE COUNTY, FLORIDA and ZORAIDA DIAZ–ALBERTINI, and against the Plaintiffs AMERICAN DOG OWNERS ASSOCIATION, INC., and RESPONSIBLE DOG OWNERS OF DADE, an unincorporated association and ROBERT SANCHEZ, and that the Plaintiffs take nothing nor are they entitled to the relief they seek as a result of this action. As a result of this judgment, the Plaintiffs' cause is dismissed, with prejudice. Such costs as may be taxable will be considered by the Court upon motion properly filed.

DONE AND ORDERED.